## LOUIS B. BONNARENS, by ANNIE BONNARENS, Next Friend, v. LEAD BELT RAILWAY COMPANY, Appellant.

Division Two, June 5, 1925.

1. **NEGLIGENCE: Suit by Child: No Allegation of Wife's Failure to Sue.** In a suit by a minor child to recover the penalty prescribed by statute for the negligent killing of deceased, who left a wife him ·surviving, a petition which does not allege that the widow failed to sue within six months after his death for damages on account of his death does not show any right of action in the child, and fails to state facts sufficient to constitute a cause of action.

2. ————: **Death of Father: Action Survives to Posthumous Child.** Under the statute (Sec. 4217, R. S. 1919) providing that whenever the death of an employee "is caused by the negligence, carelessness or criminal intent" of a railroad, a sum not exceeding ten thousand dollars may be recovered, by the wife of the deceased, or by his minor child or children if she fails to sue within six months after his death,· a cause of action survives to a posthumous child of the deceased father, born three months after his death, where the wife does not bring a timely suit. A child *en ventre sa mere* is for all purposes of succession to be considered to be *in esse* at the time of its father's death.

3. ————: **Pleading Specific Acts: Failure of Proof.** Where specific acts of negligence are pleaded the law places the burden of proving such specific acts upon plaintiff, and unless he proves them he cannot recover damages. Where the specific acts alleged were that while the switchman was riding on a foot-board of an engine and holding to a hand-rail, said foot-board, on account of its worn, rotten and unsafe condition, gave way, and the loose and bent hand-rail turning and slipping, he was caused to fall from the foot-board, there is a failure of proof if there is no evidence tending to prove that the foot-board was rotten or unsafe or gave way.

309 Mo. Sup.—5.

4. ———: ———: **Pleaded as Conjunctive Causes.** The petition having alleged that while the switchman was riding on the foot-board of the engine, said foot-board "gave way, and the loose, bent condition of the hand-rail turning and slipping, he was caused to fall from said foot-board," pleaded conjunctively and not as alternate causes, plaintiff does not establish a right to recover by proving that the hand-rail was bent and turned, where the physical facts demonstrate that the foot-board did not give way and had nothing to do with the accident, and it is not alleged that the turning of the hand-rail caused him to fall.

5. ——: ———: **Submitted on Theory of General Negligence.** Where the petition alleges specific acts of negligence and alleges them conjunctively as the cause of the injury, the case cannot be submitted to the jury on the theory of general negligence.

Corpus Juris-Cyc. References: Death, 17 C. J., Sections 62, p. 1216, n. 52; 144, p. 1289, n. 95. Master and Servant, 39 C. J., Sections 1185, pp. 959, n. 69, 960, n. 72; 1209, p. 989, n. 29; 1276, p. 1070, n. 62; 1412, p. 1231, n. 60. Negligence, 29 Cyc. pp. 587, n. 57; 588, n. 67; 597, n. 42; 625, n. 23, 24 New; 646, n. 57, 58, 60. Trial, 38 Cyc. p. 1533, n. 31.

Appeal from St. Francois Circuit Court.—*Hon. Peter H. Huck,* Judge.

REVERSED AND REMANDED.

*Jerry B. Burks* and *Parkhurst Sleeth* for appellant.

(1) The petition wholly failed to state or show a cause of action in plaintiff. There was no allegation that the widow of deceased, mother of plaintiff, failed to appropriate the cause of action within the allotted six months. Absent this jurisdictional averment, no cause of action was stated. Sec. 4217, R. S. 1919; Smith v. Allee, 245 S. W. 1118; Barker v. Railway, 91 Mo. 86; McNamara v. Slocum, 76 Mo. 329; Clark v. Railway, 219 Mo. 524, 538; Chandler v. Railway, 251 Mo. 592; Sheets v. Railway, 152 Mo. App. 380; Packard v. Railway, 181 Mo. 421; Casey v. Transit Co., 116 Mo. App. 235; Elliott v. Water Light & Tr. Co., 245 S. W. 570; McGrew v. Mo. Pac. Ry. Co., 230 Mo. 496. (2) Plaintiff, being a posthumous child, never had a right of action. The cause of action accrued at the date of death of Bonnarens, and the right

of action vested in those only surviving at that time. The widow being the only survivor entitled to sue, she would have one year in which to sue, and a posthumous child cannot cut off that right. Section 4217 is a penal statute, and strictly construed. Buel v. Rys. Co., 248 Mo. 126; Grier v. Railway, 286 Mo. 523; See dissenting opinion in Betz v. K. C. So. Ry., 253 S. W. 1094. (a) Moreover, Sections 4217, 4218 and 4219 are in derogation of common law. Barker v. Railway, 91 Mo. 91; Bates v. Sylvester, 205 Mo. 493; Troll v. Laclede Gas Light Co., 182 Mo. App. 604. (b) The right to sue is not a property right. Hopkins v. Fogler, 60 Me. 266; Bates v. Sylvester, 205 Mo. 493. (3) The demurrer to the evidence should have been sustained, for the reason that the testimony failed to show that the death of Bonnarens was due to any specified negligence of defendant. The jury simply guessed at it. Grant v. Railway, 190 S. W. 589; Weber v. Milling Co., 242 S. W. 988; Hartman v. Railway, 261 Mo. 279; McGrath v. Tr. Co., 197 Mo. 97; Byerly v. Light & Power Co., 130 Mo. App. 600; Kane v. Mo. Pac. Ry., 251 Mo. 13. And plaintiff having alleged specific acts of negligence, it was incumbent on him to show that the precise acts pleaded caused the injury and death. Painter v. Construction Co., 269 Mo. 104; McGrath case, 197 Mo. 105.

*Foristel, Mudd, Hezel & Habenicht* and *James T. Blair* for respondent.

(1) A posthumous child has a right of action under the section of the statutes applicable in this case. The George and Richard, 24 L. T. Reps. 717, 3 Ad. & Eccl. 466; Nelson v. Galveston Railroad Co., 78 Tex. 621; Herndon v. Railroad Co., 37 Okla. 256; Chicago & Alton Railroad Co. v. Logue, 47 Ill. App. 295; Quinlan v. Welch, 23 N. Y. Supp. 963; Tiffany on Death by Wrongful Act (2 Ed.) sec. 84, p. 202; 1 Shearman & Redfield on Negl. (5 Ed.) sec. 133; 5 Sutherland on Damages (4 Ed.) sec. 1267, pp. 4894, 4895; Aubuchon v. Bender, 44 Mo. 569;

Harper v. Ancher, 4 Smedes & Marshall, 99, 43 Am. Dec. 473, 474; and note; Copper Co. v. Industrial Com., 57 Utah, 142. (2) If the judgment be reversed for errors assigned the cause should be remanded for a new trial. Stewart v. Gas Light Company, 241 S. W. (Mo.) 909; Rutledge v. Mo. Pac. Ry. Co., 123 Mo. 140; Schmitt v. Distilling Co., 90 Mo. 295; Finnegan v. Railroad, 244 Mo. 608; Riggs v. Rys. Co., 220 S. W. 697. (3) The statute must be liberally construed to attain the remedy intended. Sec. 7048, R. S. 1919; Betz v. Ry. Co., 253 S. W. 1089; Grier v. Ry. Co, 286 Mo. 523.

HIGBEE, C.—This action was commenced December 13, 1921, against Federal Lead Company and appellant to recover damages on account of the death of plaintiff's father, Ben Bonnarens. An amended petition was filed September 1, 1923. At the conclusion of the evidence for the plaintiff the action was dismissed as to Federal Lead Company and, the defendant standing on a demurrer to the evidence, the cause was submitted, and nine of the jurors returned a verdict for plaintiff, assessing his damages at $10,000, and from a judgment thereon the defendant appeals.

Ben Bonnarens was employed by the defendant as a brakeman to assist in handling cars operated by appellant over its tracks in transporting material to the lead company's shafts and plants. The amended petition alleges it was Bonnarens' duty to ride defendant's locomotives, and that for the convenience of its employees defendant had provided a foot-board at the rear end of the tender of its locomotives for them to stand on when riding from one point to another; also a hand-rail, called by some of the witnesses, a grab-iron, attached to the tender three or four feet above the footboard, consisting of a metal rod extending across the end of the tender and attached to brackets at each corner of the tender, for employees to hold to while riding on the foot-board. That it was defendant's duty to provide a reasonably safe place and appliances for its employees to work with and

upon and to use reasonable care that the foot-board and handrail were reasonably safe and suitable for the purposes for which they were intended; that, disregarding its duties, defendant carelessly and negligently allowed said foot-board and hand-rail to become in a worn, weakened, loose, rotten, bent and unsafe condition, which was known to defendant, its servants and agents, or by the exercise of ordinary care could have been known to it, and was unknown to said Ben Bonnarens. That on March 7, 1921, while said Ben Bonnarens, plaintiff's father, as defendant's employee, was in the discharge of his duty as brakeman, and riding on said footboard and holding to said hand-rail, in line with his duties, said foot-board, on account of its worn, rotten and unsafe condition, gave way, and the loose, bent condition of the hand-rail turning and slipping, the said Ben Bonnarens was caused to fall from said foot-board in defendant's track and in front of its locomotive and was run over by said tender and engine, producing instant death; that the direct and proximate cause of his death was the negligence and carelessness of defendant, its servants and agents in permitting said foot-board to become in a worn, rotten, weakened and unsafe condition and said hand-rail to become loose and bent.

Bonnarens was six feet in stature, weighed two hundred pounds, and was twenty-six years of age at the time of his death. He left surviving him his wife, Addie, but no child or children. Plaintiff was born June 26, 1921, three months and nineteen days after his father's death. Plaintiff's mother was duly appointed and qualified as his next friend.

John Watts testified: I had worked for the defendant sixteen years as machinist-foreman, but not in the capacity all the time; saw Bonnarens about seven A. M., March 7, 1921, at the roundhouse of which I had charge at that time. Bonnarens was switchman or brakeman on engine number 2 and had been in service twelve or thirteen years. My duty with reference to the locomotives was to see after general repairs. The foot-board

is a pine board about 2 x 12, six feet long, and there is a toe board 2 x 6, to keep the foot from slipping over the foot-board. The foot-board is attached to the tender by bolts and is about twelve inches above the rails. There was no break in it to my knowledge. For convenience of employees riding on the foot-board there was a grab-iron on the top of the end to which the foot-board was fastened. It is a one-inch pipe about six feet long; it was bent some in the middle, about an inch and a quarter or an inch and a half. It was loose in the brackets. In taking hold of the hand-rail it would turn. I have ridden on this locomotive; have been on this foot-board; don't know that I got on it when the engine was moving. I wouldn't say that I paid any particular attention to this engine. Never saw the foot-board after the accident. I couldn't say this foot-board was worn out of the ordinary. Saw the engine about two or three hours after the accident; it had on a new foot-board then; didn't see the foot-board that was taken off. The hand-rail was loose in the brackets; it fit close, yet would revolve in these brackets.

Edwin Hood: I have worked there as a switchman twelve years. I saw Bonnarens at the roundhouse about 7:15 that morning; he worked on engine number 2. The next time I saw him he was out there in the track about ten minutes after I saw him at the roundhouse; he was dead; his legs were broken; the engine was about two hundred feet from the body. There was a bend in the hand-rail close to the middle; don't know how much of a bend; it was loose in the brackets. It is safer if the rod is tight in the brackets. These conditions had existed over a month. It fit fairly snug in these sockets, yet it would turn. The customary way of getting on a foot-board as the engine approaches is to raise one foot, grab the rod with one hand and step on from the end of the ties.

"Q. If you got on that foot-board and had hold of that rail with a reasonably firm grip there would be no

danger of losing your hold on that rail, would there?
A.   Well, I don't know.   It never happened to me.

"Q.   Well, you did have hold of it while it was
being used?   A.   Yes, sir.

"Q.   And it didn't give you any trouble at any time?
A.   No, never gave me any.   That was my experience.

"Q.   When you get upon the engine and grab hold
of that iron to hold yourself, what would happen?   A.
Well, it is liable to turn with you, of course.''

Henry Pelot had worked for the Federal Lead Com-
pany as locomotive engineer and knew deceased; was
familiar with the foot-board on engine number 2; saw
the hand-rail and foot-board, but never paid any atten-
tion; had observed the hand-rail for six or seven months
before Bonnarens was hurt; it was bent in the middle;
couldn't say how much; was loose in the brackets; had
worked on other engines thirteen years; the grab-irons
were not loose on them; to be safe they should be stat-
ionary.

J. H. Flannery: I was employed by the Lead Belt
Railway as engine foreman in March, 1921.  Bonnarens
had worked with my crew for a year and a half up to
time of accident.  He was in the engine a minute or two
and he got down to set a switch forty or fifty feet from
the rear end of the engine.  The next time I saw him he
was laying on the track after the engine had passed over
him.  I have rode on that foot-board considerably.  It
could not have been a very old one.  I did not examine it
particularly until after it was on the "rip" track thirty
or forty minues after he was hurt.  It was pushed up
from the bottom on the right-hand side of the tank; not
right in the center, but more towards the end.  I noticed
quite often there being a little bend in the hand-rail; it
would turn a little bit if you would get hold of it.

John H. Armstrong: I ran engine number 2; Bon-
narens was switchman.  He was in the cab when we
started out about seven in the morning.  We had only
gone a short ways until he got out to throw a switch.
He was on the right side; he got on the end of the foot-

. board and give me a sign with his left hand and I went on; that was the last time I saw him alive. He was then on the foot-board. I don't know what he had hold of after he got on, but he taken hold of the hand-rail with his right hand when he stepped on the end of the board and gave me a sign to back up. I next saw him lying on the track after I had passed over him. I moved the engine after he gave the sign between eight hundred and one thousand feet. I was running slow, not much faster than you could walk. He had been working on the engine a couple of months. I had seen the foot-board that day before the accident. It was in good condition as far as I know. I walked around the engine twice that morning before we left the pit, and while I was not looking for a broken foot-board, if it had been broke I would naturally have seen it, because I was looking for things to repair. No break in it day before to my knowledge. Well, the engine had started and he got off to throw the switch, but another man came along and throwed it. The hand-rail is a piece of gas pipe and runs from the end sill on the tank clear up to the top of the tank. This other rail that extends crossways of the tender we call the grab-iron because a man always grabs it when he gets on the foot-board. I saw the foot-board a few minutes after the accident; it was broken; it wasn't broken clear in two; just bulged up and splintered like it had had a hard pry on it; it wasn't broken in two; board is about ten inches above the rails.

Over defendant's objection, it was shown that the widow of the deceased did not, within six months after the death of Bonnarens, bring action for damages on account of his death. Appellant assigns as error, (1) the refusal of the demurrer to the evidence, (2) the giving of plaintiff's instructions and each of them, and (3) the refusal of defendant's Instruction B.

I. Under the first assignment it is contended that because the amended petition does not aver that the widow of the deceased failed to sue within six months

after the death of her husband for damages on account of his death, it does not show any right of action in the plaintiff. Section 4217, Revised Statutes 1919, on which this action is based, provides a penalty "for every such person, employee or passenger so dying, the sum of not less than two thousand dollars, and not exceeding ten thousand dollars, in the discretion of the jury, which may be sued for and recovered; First, by the husband or wife of the deceased; or, second, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of the deceased, whether such minor child or children be the natural born or adopted child or children of the deceased."

In Clark v. Railroad, 219 Mo. 534, 538, 118 S. W. 40, LAMM, J., said: "In our exposition of the statute it has been steadily held that, as there was no right of action for a wrongful death at common law at all, and, as the statute transmitting such right of action is in derogation of the common law, it must be construed with reasonable strictness. Furthermore, as the right of action is only of statutory origin, the Legislature had the right in creating it to prescribe a preclusive remedy, and nominate those entitled to sue and the terms on which they could sue and has done so. In Barker v. Railroad, 91 Mo. l. c. 94, it was said: 'In statutory actions of this sort, the party suing must bring himself strictly within the statutory requirements necessary to confer the right, and this must appear in the petition; otherwise, it shows no cause of action.' The doctrine so announced is bottomed on the reasoning in McNamara v. Slavens, 76 Mo. 329, and in Coover v. Moore, 31 Mo. 574—the latter case holding that: 'There being thus no general right of recovery, open to all persons, representing the estate of the deceased, or interested in his life, only such persons can recover in such time, and in such manner, as is set forth in the statute.'" See also Chandler v. Railroad, 251 Mo. 592, 598, 158 S. W. 35, and Smith v. Allee, 245 S. W. 1117, 1118.

Lacking this essential averment, the petition fails to state facts sufficient to constitute a cause of action.

II. It is insisted that the cause of action accrued at the time of the death of Bonnarens and the right of action vested in those only who survived at that time; hence plaintiff, being a posthumous child, does not come within the terms of the statute and is not entitled to prosecute this action. There is no merit in this contention.

*Posthumous Child.*

In Aubuchon v. Bender, 44 Mo. 560, 569, Judge BLISS said: "The principle is broadly and clearly stated by Chancellor WALWORTH in Marcellis v. Thalhimer, 2 Paige, 39, 40. The court there says: 'It is at this day a well settled rule of law relative to successions, and to most other cases in relation to infants, that a child *en ventre sa mere,* as to every purpose where it is for the benefit of the child, is to be considered *in esse.*' 'It was for some time doubted whether such a child could take a contingent remainder before its birth. The question was finally settled,' etc., citing Reeve v. Long. 'It is now settled both in England and here that the infant, after conception but before its birth, is *in esse,* for the purpose of taking the remainder or any other estate or interest which is for the benefit of the infant.' "

In Nelson v. Galveston R. Co., 78 Tex. 621, 11 L. R. A. 391, 392, it is said: "After giving the right to sue for actual damages on account of injuries causing the death of a person, our statute (Art. 2903 of Revised Statutes) provides: ''The action shall be for the sole and exclusive benefit of the surviving . . . children . . . of the person whose death shall have been so caused,' etc.' The question, then, is whether the term 'children,' as used in the statute, includes a posthumous child of 'the person whose death shall have been so caused,' " etc. After reviewing the English decisions construing Lord Campbell's Act, the court concludes: "We think, also, that the plaintiff in this case, although unborn at the time of his father's death, was in being

and one of his surviving children." See also Phair v. Dumond, 156 N. W. (Neb.) 637, 639; Herndon v. Railroad, 37 Okla. 256; 17 C. J. 1216.

Appellant relies on Buel v. Railroad, 248 Mo. 126, 154 S. W. 71, 45 L. R. A. (N. S.) 625, and other like cases. In the Buel case it was held, quoting syllabus 2, that "at common law a child injured while *en ventre sa mere,* but subsequently born alive, did not have the right to maintain an action for the injuries so received, and as the child itself could not maintain such action had it lived, the action is not by the statute made to survive to its parents upon its death." See also Lipps v. Railway, 159 N. W. (Wis.) 916, L. R. A. 1917 B, 334. The cases hold that neither the child nor its representatives can recover for prenatal injuries inflicted upon it. That is not this case.

III.   The petition charges specific acts of negligence; that is, that while riding on the foot-board and holding to the hand-rail, said foot-board, on account of its worn, rotten and unsafe condition, gave way, and the loose, bent condition of the hand-rail turning and slipping, the said Ben Bonnarens was caused to fall from said foot-board, etc. There is not a word of evidence tending to prove that the foot-board was rotten or unsafe or that it gave way. The clear inference from the evidence is that in passing over Bonnarens' body, the foot-board, which was ten or twelve inches above the rails, was "bulged up and splintered like it had had a hard pry on it." Nor is there any evidence that the hand-rail or grab-iron was not in a reasonably safe condition for the purpose for which it was designed because it was slightly bent and would turn in the brackets. The brakeman, while riding on the foot-board, could steady himself by holding the hand-rail. The engine was backing very slowly, not faster than a man could walk. There is no complaint that the track was rough. Bonnarens had been riding this foot-board and using this hand-rail for two months. Edwin Hood, who had worked there as switch-

man for thirteen years, testified there was a bend in the hand-rail; "It is safer if the rod is tight in the brackets; it fit fairly snug, yet it would turn. It never gave me any trouble. That was my experience." The allegation is that Bonnarens was caused to fall because the foot-board, on account of its rotten condition, gave way, and the hand-rail "turning and slipping" because of its bent condition. The first hypothesis was clearly negatived; the second is purely conjectural. There was no eye witness to the accident. What caused the fall does not appear from the evidence. It may or may not have been caused by the turning of the grab-iron. On another trial plaintiff may be able to get the case out of the fog of speculation. Where the plaintiff pleads specific acts of negligence, the law places the burden of proving such specific negligence on the plaintiff, and he can recover only upon proof of the negligence pleaded. [McGrath v. Transit Co., 197 Mo. 97, 105, 94 S. W. 872.] The facts in this case are wholly unlike those in Stewart v. Gas Co., 241 S. W. (Mo.) 909, 912, where the McGrath case is cited approvingly. The court should have sustained the defendant's demurrer to the evidence.

IV. The allegation is that Bonnarens' fall was caused because the rotten foot-board gave way *and* "the hand-rail turning and slipping." These are the causes, pleaded conjunctively, that occasioned his fall. They are not pleaded alternatively; that is, that one or the other was the producing cause. The physical facts demonstrate that the foot-board did not give way; had nothing to do with the accident. It is not averred that the turning of the hand-rail caused the fall; hence plaintiff was not entitled to recover on the averments of the petition.

V. The court also erred in giving plaintiff's Instruction number 4 which submitted the case on the theory of general negligence; also in refusing defendant's In-

struction B, that there was no evidence that the foot-board was defective or unsafe.

The judgment is reversed and the cause remanded. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is hereby adopted as the opinion of the court. All concur.