SEAN SMITH, BY HIS *GUARDIAN AD LITEM*, THOMAS
SMITH AND THOMAS SMITH, INDIVIDUALLY, PLAIN-
TIFFS-APPELLANTS, AND JOHN FLANNELLY, NELLIE
SMITH, FRANCES SMITH AND THOMAS SMITH, PLAIN-
TIFFS, v. PHYLLIS BRENNAN, FELIX J. BRENNAN,
MARIE CLAIRE GALBRAITH AND GEORGE GALBRAITH,
DEFENDANTS-RESPONDENTS.

Argued November 24, 1959—Decided January 11, 1960.

*Mr. Thomas F. Shebell* argued the cause for the plaintiffs-appellants.

*Mr. Robert R. Witt* argued the cause for the defendants-respondents, Phyllis Brennan and Felix J. Brennan (*Messrs. Durand, Ivins & Carton,* attorneys; *Mr. Robert R. Witt* of counsel).

*Mr. Theodore W. Geiser* argued the cause for the defendants-respondents, Marie Claire Galbraith and George Galbraith (*Messrs. Shaw, Pindar, McElroy, Connell & Foley,* attorneys; *Mr. Theodore W. Geiser* of counsel and on the brief).

The opinion of the court was delivered by

PROCTOR, J.   The complaint alleges that on July 25, 1956 the infant plaintiff Sean Smith, while in the womb of his mother, was injured in an automobile collision caused by the defendants' negligence and that he was born on October 8, 1956 with resulting deformities of his legs and feet.   The defendants all moved to dismiss the complaint of the infant plaintiff and his father suing *per quod* on the ground that the law of this State does not recognize a cause of action for a negligently inflicted prenatal injury.   The Law Division granted the defendants' motions and dismissed the action, holding that it was bound by *Stemmer v. Kline,* 128 *N. J. L.* 455 (*E. & A.* 1942).   We certified the plaintiffs' appeal before the Appellate Division considered it.

In *Stemmer v. Kline,* Judge Oliphant (later of this court), sitting at the Middlesex Circuit, refused to strike a complaint which alleged that the infant plaintiff, then five years old, was injured before its birth as a result of a physician's malpractice.   19 *N. J. Misc.* 15 (1940).   At the subsequent

trial, the plaintiff obtained a judgment upon a jury verdict. However, the Court of Errors and Appeals, considering the question for the first time and relying on the decisions in other jurisdictions, reversed on the ground that at common law there was no right of action for prenatal injury, and "there being no statute establishing such right in this State, it is non-existent." 128 *N. J. L.,* at *page* 456. The vote was nine to six on this question and Chief Justice Brogan wrote a vigorous dissenting opinion for the minority. When *Stemmer v. Kline* was decided, its holding accorded with every decision on the point by an American court of last resort. Since then, however, a number of states have permitted recovery for negligently inflicted prenatal injuries. On the basis of the arguments that have persuaded the courts of those states we are now urged to reexamine the rule of *Stemmer v. Kline.*

All of the cases relied on by the majority in *Stemmer v. Kline* took their lead from *Dietrich v. Inhabitants of Northampton,* 138 *Mass.* 14, 52 *Am. Rep.* 242 (*Sup. Jud. Ct.* 1884), which appears to be the first reported American or English case passing on the question. There the court, through Justice Holmes, denied liability to the personal representative of a child who died at birth from prenatal injuries. The decision rested on the complete lack of precedent and the concept that before birth a child is merely part of his mother without separate existence or personality. The *Dietrich* case arose under a wrongful death statute; and it is doubtful that the child was born alive. See *White, The Right of Recovery for Prenatal Injuries,* 12 *La. L. Rev.* 383 (1952). Thus, although *Dietrich* has been universally cited for the proposition that there is no cause of action for prenatal injury, the actual holding of the case does not provide direct authority for denying recovery to a child who suffers prenatal injuries but survives. Commentators on the subject have noted that in prenatal death cases there are special factors, *e. g.,* the remote and speculative character of the damages, whose cumulative effect might justify a denial of

relief. 2 *Harper and James, Torts*, § 18.3, *p.* 1031 (1956); *Note*, 63 *Harv. L. Rev.* 173 (1949); *Note*, 3 *Vand. L. Rev.* 282 (1950); see also *Drabbels v. Skelly Oil Co.*, 155 *Neb.* 17, 50 *N. W. 2d* 229 (*Sup. Ct.* 1951); *In re Logan's Estate*, 4 *Misc. 2d* 283, 156 *N. Y. S. 2d* 49 (*Surr.* 1956), affirmed on opinion below, 2 *A. D. 2d* 842, 156 *N. Y. S. 2d* 152 (*App. Div.* 1956), leave to appeal denied, 2 *A. D. 2d* 886, 157 *N. Y. S. 2d* 900 (*App. Div.* 1956), affirmed 3 *N. Y. 2d* 800, 166 *N. Y. S. 2d* 3, 144 *N. E. 2d* 644 (*Ct. App.* 1957).

The first case brought for a child who survived prenatal injuries was *Allaire v. St. Luke's Hospital*, 184 *Ill.* 359, 56 *N. E.* 638, 48 *A. L. R.* 225 (*Sup. Ct.* 1900). Relying on the *Dietrich* case, the court denied the power of the common law to grant recovery for an injury sustained by a child four days before its normal-term birth. The rationale of the court's holding was "[t]hat a child before birth is, in fact, a part of the mother, and is only severed from her at birth, * * *," and that, therefore, the defendant owed no independent duty to it. Justice Boggs wrote a dissenting opinion in which he pointed out that at the time of the injury the child was viable, *i. e.*, capable of sustaining life independent of its mother, and was therefore a person entitled to the law's protection.

Between 1900, when *Allaire v. St. Luke's Hospital* was decided, and 1942, the year of the decision of *Stemmer v. Kline*, a number of other states also denied recovery in prenatal injury and death cases. *Gorman v. Budlong*, 23 *R. I.* 169, 49 *A.* 704, 55 *L. R. A.* 118 (*Sup. Ct.* 1901); *Nugent v. Brooklyn Heights Railway Co.*, 154 *App. Div.* 667, 139 *N. Y. S.* 367 (*App. Div.* 1913), appeal dismissed, 209 *N. Y.* 515, 102 *N. E.* 1107 (*Ct. App.* 1913); *Buel v. United Rys. Co. of St. Louis*, 248 *Mo.* 126, 154 *S. W.* 71, 45 *L. R. A., N. S.*, 625 (*Sup. Ct.* 1913); *Lipps v. Milwaukee Electric Ry. & Light Co.*, 164 *Wis.* 272, 159 *N. W.* 916, *L. R. A.* 1917B 334 (*Sup. Ct.* 1916); *Drobner v. Peters*, 232 *N. Y.* 220, 133 *N. E.* 567, 20 *A. L. R.* 1503 (*Ct. App.* 1921);

*Stanford v. St. Louis-San Francisco R. Co.,* 214 *Ala.* 611, 108 *So.* 566 (*Sup. Ct.* 1926) ; *Magnolia Coca Cola Bottling Co. v. Jordan,* 124 *Tex.* 347, 78 *S. W.* 2d 944, 97 *A. L. R.* 1513 (*Sup. Ct.* 1935) ; *Newman v. City of Detroit,* 281 *Mich.* 60, 274 *N. W.* 710 (*Sup. Ct.* 1937) ; *Berlin v. J. C. Penney Co., Inc.,* 339 *Pa.* 547, 16 *A.* 2d 28 (*Sup. Ct.* 1940). In the main these decisions adopted the reasoning of the *Dietrich* and *Allaire* cases, although occasionally they advanced additional reasons. See also *Walker v. Great Northern Ry. Co.,* 28 *L. R. Ir.* 69 (*Q. B.* 1891) ; but see *Kine v. Zuckerman,* 4 *Pa. Dist. & Co. R.* 227 (*C. P.* 1924). In 1940 a New Jersey trial court followed the prevailing rule and denied recovery. *Ryan v. Public Service Co-Ordinated Transport,* 18 *N. J. Misc.* 429 (*Sup. Ct.* 1940). California authorized recovery with the aid of a statute, *Scott v. Mc-Pheeters,* 33 *Cal. App.* 2d 629, 92 *P.* 2d 678 (*Dist. Ct. App.* 1939), rehearing denied 33 *Cal. App.* 629, 93 *P.* 2d 562 (*Sup. Ct.* 1939), and Louisiana reached the same result under its civil law code. *Cooper v. Blanck,* 39 *So.* 2d 352 (*La. App.* 1923). See also *Montreal Tramways v. Leveille,* 4 *Dom. L. R.* 337 (*Can. Sup. Ct.* 1933).

Such was the state of judicial thought at the time *Stemmer v. Kline* was decided. The Restatement of the American Law Institute followed the common law cases decided before its adoption in 1939, and stated: "A person who negligently causes harm to an unborn child is not liable to such child for the harm." 4 *Restatement, Torts,* § 869 (1939). However, many writers had long urged a rule of recovery for negligently inflicted prenatal injuries. See *Morris, "Injuries to Infants en Ventre sa Mere,"* 58 *Cent. L. J.* 143 (1904) ; *Kerr, "Action by Unborn Infant,"* 61 *Cent. L. J.* 364 (1905) ; *Frey, "Injuries to Infants en Ventre sa Mere,"* 12 *St. Louis L. Rev.* 85 (1927) ; *Prosser, Torts,* 190 (1941) ; *Note,* 36 *N. J. L. J.* 295 (1913). The writers of the Restatement expressly declined, without explanation, to take a position on the question of liability for intentional or reckless prenatal harm. 4 *Restatement, Torts,* § 869, *caveat* (1939).

The principal reasons advanced in support of the rule denying recovery have been (1) the lack of precedent, in that no case had permitted recovery, see *e. g., Dietrich v. Inhabitants of Northampton, supra,* (2) the principle of *stare decisis* and the thought that the problem is one for the Legislature, see *e. g., Drobner v. Peters, supra,* (3) the conclusion that an unborn child is part of its mother and hence no independent duty is owed to it, see *e. g., Allaire v. St. Luke's Hospital, supra,* and (4) the difficulty of proof of causation and fear of fraudulent claims, see *e. g., Magnolia Coca Cola Bottling Co. v. Jordan, supra.*

As to the first ground, there is no longer a lack of precedent. In 1946, the District Court for the District of Columbia sustained an action by a child for a prenatal injury, basing its decision solely on the common law. *Bonbrest v. Kotz, D. C.,* 65 *F. Supp.* 138 (1946). However, until 1949, no American court of final jurisdiction had held that a child had a common law action for injuries incurred before birth. In that year the Supreme Court of Ohio in *Williams v. Marion Rapid Transit, Inc.,* 152 *Ohio St.* 114, 87 *N. E.* 2d 334, 10 *A. L. R.* 2d 1051, held that a viable fetus was a "person" within the meaning of the Ohio Constitution, and thus after birth could maintain an action for tortious prenatal injuries. Though the case was one of first impression in that court, the decision overruled *Mays v. Weingarten, Ohio App.,* 82 *N. E.* 2d 421 (1943), in which the Ohio Court of Appeals had held to the contrary. Shortly thereafter the Supreme Court of Minnesota in *Verkennes v. Corniea,* 229 *Minn.* 365, 38 *N. W.* 2d 838, 10 *A. L. R.* 2d 634 (1949), followed the reasoning of Justice Boggs' dissenting opinion in the *Allaire* case, and held that the personal representative of a stillborn child could maintain an action for its wrongful death, since it was viable at the time of the injury.

Since 1949 a number of other states have overruled former decisions and have allowed recovery for prenatal injuries. *Amann v. Faidy,* 415 *Ill.* 422, 114 *N. E.* 2d 412 (*Sup. Ct.*

1953) (overruling *Allaire v. St. Luke's Hospital, supra*);
*Woods v. Lancet,* 303 *N. Y.* 349, 102 *N. E.* 2d 691, 27
*A. L. R.* 2d 1250 (*Ct. App.* 1951) (overruling *Drobner v. Peters, supra*); *Steggall v. Morris,* 363 *Mo.* 1224, 258 *S. W.*
2d 577 (*Sup. Ct.* 1953) (overruling *Buel v. United Rys. Co.
of St. Louis, supra*); *Tursi v. New England Windsor Co.,*
19 *Conn. Sup.* 242, 111 *A.* 2d 14 (*Super. Ct.* 1955), and
*Prates v. Sears, Roebuck & Co.,* 19 *Conn. Sup.* 487, 118 *A.*
2d 633 (*Super. Ct.* 1955) (refusing to follow *Squillo v. City
of New Haven,* 14 *Conn. Sup.* 500 (*Super. Ct.* 1947)). See
also *Von Elbe v. Studebaker-Packard Corp.,* 15 *Pa. Dist.
& Co. R.* 2d 635 (*C. P.* 1958).

The courts of many other states, which have considered
the question for the first time, have also permitted recovery
for prenatal injuries. *Rainey v. Horn,* 221 *Miss.* 269, 72 *So.*
2d 434 (*Sup. Ct.* 1950); *Tucker v. Howard L. Carmichael
& Sons, Inc.,* 208 *Ga.* 201, 65 *S. E.* 2d 909 (*Sup. Ct.* 1951);
*Damasiewicz v. Gorsuch,* 197 *Md.* 417, 79 *A.* 2d 550 (*Ct.
App.* 1951); *Mitchell v. Couch,* 285 *S. W.* 2d 901 (*Ky. Ct.
App.* 1955); *Mallison v. Pomeroy,* 205 *Or.* 690, 291 *P.* 2d
225 (*Sup. Ct.* 1955); *Worgan v. Greggo & Ferrara, Inc.,*
11 *Terry* 258, 50 *Del.* 258, 128 *A.* 2d 557 (*Super. Ct.* 1956);
*Poliquin v. MacDonald,* 101 *N. H.* 104, 135 *A.* 2d 249 (*Sup.
Ct.* 1957).

All of the above courts have repudiated the theories upon
which the rule denying liability was based. Leading text
writers have also condemned the rule. 2 *Harper and James,
Torts,* § 18.3 (1956); *Prosser, Torts,* § 36, *pp.* 174–75
(2d ed. 1955). See also *White, "The Right of Recovery for
Prenatal Injuries,"* 12 *La. L. Rev.* 383 (1952); *Note,* 36
*Va. L. Rev.* 611 (1950); *Note,* 48 *Mich. L. Rev.* 539 (1950);
*Note,* 63 *Harv. L. Rev.* 173 (1949); *Note,* 35 *Cornell L. Q.*
648 (1950); *Annotation* 10 *A. L. R.* 2d 1059, at *p.* 1071
(1950); *Annotation* 27 *A. L. R.* 2d 1256 (1953). In
recent decisions, four states which had not before passed
upon the question of liability for prenatal injuries denied
recovery to the personal representative of a child stillborn.

*Drabbels v. Skelly Oil Co.*, 155 *Neb.* 17, 50 *N. W. 2d* 229 (*Sup. Ct.* 1951); *Howell v. Rushing,* 261 *P. 2d* 217 (*Okla. Sup. Ct.* 1953); *West v. McCoy,* 233 *S. C.* 369, 105 *S. E. 2d* 88 (*Sup. Ct.* 1958); *Hogan v. McDaniel, Tenn.,* 319 *S. W. 2d* 221 (*Sup. Ct.* 1958). The first three decisions expressly said they made no determination of the rights of a child born alive. As mentioned above there are factors which may differentiate prenatal death cases from those brought for a surviving child.

We are not aware of a single case since *Stemmer v. Kline* was decided in 1942 in which a court of last resort, considering the question for the first time, denied the right of a child born alive to maintain a common law action for prenatal injuries. And as we have mentioned above at least four states have overruled prior decisions denying liability. Today it certainly cannot be said that there is any lack of precedent permitting such an action. Indeed, Dean Prosser has said the trend toward allowing recovery "is so definite and marked as to leave no doubt that this will be the law of the future in the United States." *Prosser, supra,* at *p.* 175.

██ The second reason given by the courts for denying recovery was *stare decisis,* and the thought that the problem is one for the Legislature. *Stare decisis* is a principle of adherence, for the sake of certainty and stability, to precedents once established. But it applies primarily to decisions, unlike *Stemmer v. Kline,* which invite reliance and on the basis of which men order their affairs, *e. g.,* in the field of contract or property rights. The present case arose out of an automobile collision. If the defendants' conduct caused the collision they have no right to argue that they acted in reliance on a rule of law barring recovery for prenatal injuries. See *Collopy v. Newark Eye and Ear Infirmary,* 27 *N. J.* 29, at *page* 42 (1958); *Kellogg v. Marlin,* 130 *N. J. Eq.* 338, at *page* 343 (*Prerog. Ct.* 1941).

██ Nor do we believe that it is for the Legislature and not this court to reexamine the rule of *Stemmer v. Kline.* No doubt the Legislature could act in this field, if it so

chose. We recognize, of course, that there are some changes in the common law which should not be made without the kind of investigation for which the Legislature is better equipped. But the rule of non-liability for prenatal injury was a judge-made rule based on what were once felt to be sound principles. If judges of later years who examine the problem anew with the aid of recent judicial opinions, advanced medical knowledge, and the views of many eminent legal scholars "reach a contrary conclusion they must be ready to discharge their own judicial responsibilities in conformance with modern concepts and needs." *Collopy v. Newark Eye and Ear Infirmary, supra,* 27 *N. J.,* at *page 42*; *Morris, Torts,* 198 (1953). The law of negligence is primarily common law, whose great virtue is its adaptability to the conditions and needs of changing times. As was said by the late Chief Justice Vanderbilt:

> "The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice." *State v. Culver,* 23 *N. J.* 495, 505 (1957).

See also *Faber v. Creswick,* 31 *N. J.* 234 (1959); *Cardozo, Nature of the Judicial Process,* 98 (1921); *Pound, Some Thoughts About Stare Decisis,* 13 *N. A. C. C. A. L. J.* 19 (1954).

The third reason for the rule denying recovery was the theory that an unborn child was a part of the mother, and therefore not a person in being to whom a duty of care could be owed. All the courts that have permitted recovery for prenatal injuries have disagreed with that theory. They have found that the existence of an infant separate from its mother begins before birth, see, *e. g., Damasiewicz v. Gorsuch, supra; Tucker v. Howard L. Carmichael & Sons, Inc., supra.* Medical authorities have long recognized that a child is in existence from the moment of conception, and not merely a part of its mother's body. See 1 *Beck, Medical Juris-*

*prudence,* 277 (11th ed. 1860); *Herzog, Medical Juris-prudence,* 683 *et seq.* (1931); *Corner, Ourselves Unborn,* 69 (1944); *Patten, Human Embryology,* 181 (1946); *Maloy, Legal Anatomy and Surgery,* 716 *et seq.* (2d ed. 1955). Chief Justice Brogan, dissenting in *Stemmer v. Kline,* summarized the physiological facts:

> "While it is a fact that there is a close dependence by the unborn child on the organism of the mother, it is not disputed today that the mother and the child are two separate and distinct entities; that the unborn child has its own system of circulation of the blood separate and apart from the mother; that there is no communication between the two circulation systems; that the heart beat of the child is not in tune with that of the mother but is more rapid; that there is no dependence by the child on the mother except for sustenance. It might be remarked here that even after birth the child depends for sustenance upon the mother or upon a third party. It is not the fact that an unborn child is part of the mother, but that rather in the unborn state it lived with the mother, we might say, and from conception on developed its own distinct, separate personality." 128 *N. J. L.,* at *page* 466.

Our criminal law regards an unborn child as a separate entity. See, *e. g., In re Vince,* 2 *N. J.* 443, at *page* 449 (1949); *State v. Siciliano,* 21 *N. J.* 249, at *page* 257 (1956). And our law of property and decedents' estates considers him in being for purposes beneficial to his interests. See, *e. g., In re Haines' Will,* 98 *N. J. Eq.* 628, at *page* 630 (*Prerog. Ct.* 1925); *Thelluson v. Woodford,* 4 *Ves.* 227 (*Ch.* 1798), 11 *Ves.* 112 (*H. L.* 1798). Under our Workmen's Compensation Act it has been held that a posthumous child may recover as a dependent of his deceased father, on the ground that the infant is both a "child *in esse*" at the time of his father's death and, when born, a "posthumous child," as those terms are used in *N. J. S. A.* 34:15–13, *subd. g. Morgan v. Susino Construction Co.,* 130 *N. J. L.* 418 (*Sup. Ct.* 1943), affirmed *o. b.,* 131 *N. J. L.* 329 (*E. & A.* 1944). And it has been widely held that an infant may bring a statutory action for the wrongful death of its father occurring before its birth. *The George and Richard, L. R.* 3 *Ad. & Eccl.* 466 (1871); *Nelson v. Galveston, H. & S. A.*

*Ry. Co.,* 78 *Tex.* 621, 14 *S. W.* 1021, 11 *L. R. A.* 391 (*Sup. Ct.* 1890); *Herndon v. St. Louis & S. F. R. Co.,* 37 *Okl.* 256, 128 *P.* 727 (*Sup. Ct.* 1912); *Bonnarens v. Lead Belt R. Co.,* 309 *Mo.* 65, 273 *S. W.* 1043 (*Sup. Ct.* 1925). See also *Quinlen v. Welch,* 69 *Hun.* 584, 23 *N. Y. S.* 963 (*Sup. Ct.* 1892), affirmed 141 *N. Y.* 158, 36 *N. E.* 12 (*Ct. App.* 1894).

From the foregoing it is clear that medical authorities recognize that before birth an infant is a distinct entity, and that the law recognizes that rights which he will enjoy when born can be violated before his birth. If the law in cases of negligently inflicted prenatal injuries were to disregard this background and consider an unborn child as part of its mother, then the mother should be able to recover for the pain, suffering, and incapacity to this part of her, just as to any other part. We know of no case allowing such recovery. As early as 1908, the New Hampshire Supreme Court specifically denied it, holding that "[s]uch damages pertain to the child alone. The mother is no more entitled to them than the father is." *Prescott v. Robinson,* 74 *N. H.* 460, at *page* 463, 69 *A.* 522, at *page* 524, 17 *L. R. A., N. S.,* 594. If neither mother nor child can recover, then a life impaired by another's fault must be endured without the recompense which the law provides for other persons wrongfully injured. The law should take care that, wherever possible, a wrong should not go completely unrequited.

The semantic argument whether an unborn child is a "person in being" seems to us to be beside the point. There is no question that conception sets in motion biological processes which if undisturbed will produce what every one will concede to be a person in being. If in the meanwhile those processes can be disrupted resulting in harm to the child when born, it is immaterial whether before birth the child is considered a person in being. And regardless of analogies to other areas of the law, justice requires that the principle be recognized that a child has a legal right to begin life with a sound mind and body. If the wrongful

conduct of another interferes with that right, and it can be established by competent proof that there is a causal connection between the wrongful interference and the harm suffered by the child when born, damages for such harm should be recoverable by the child.

This leads us to consider the fourth reason advanced for denying recovery for prenatal injuries, which is that proof or disproof of causal connection between negligent conduct and an injury discovered at birth or later is so difficult that recovery would often be based on mere conjecture and speculation, and that the door would be opened to fictitious claims. We are not unmindful of these difficulties, but they are not peculiar to the field of prenatal torts. They exist in many kinds of cases. Moreover, the present case is here on a motion which concedes the pleaded fact of causation. In any event, the mere difficulty of proving a fact is not a very good reason for blocking all attempts to prove it. As said by Judge (now Chief Judge) Desmond of the New York Court of Appeals in discussing this question:

> "Such difficulties there are, of course, and, indeed, it seems to be commonly accepted that only a blow of tremendous force will ordinarily injure a foetus, so carefully does nature insulate it. But such difficulty of proof or finding is not special to this particular kind of lawsuit (and it is beside the point, anyhow, in determining sufficiency of a pleading). Every day in all our trial courts (and before administrative tribunals, particularly the Workmen's Compensation Board), such issues are disposed of, and it is an inadmissible concept that uncertainty of proof can ever destroy a legal right. The questions of causation, reasonable certainty, etc., which will arise in these cases are no different, in kind, from the ones which have arisen in thousands of other negligence cases decided in this State, in the past." *Woods v. Lancet, supra,* 102 *N. E.* 2d, at *page* 695.

And as to the possibility of fictitious claims, we agree with the view of Chief Justice Brogan in his dissenting opinion in *Stemmer v. Kline,* 128 *N. J. L.,* at *page* 467:

> "The same objection may be advanced against many law actions that are encountered day after day in our trial courts. Many of

them are unjustified but the fact that some people will institute ill-founded or fraudulent causes of action is no reason to deny a cause of action where by a preponderance of the credible evidence it appears that injury has resulted from the negligence of another."

The trial courts retain sufficient control, through the rules of evidence and the requirements as to the sufficiency of evidence, to safeguard against the danger that juries will find facts without legally adequate proof. *2 Harper and James, Torts,* § 18.3, *p.* 1029 (1956); *Prosser, Torts,* § 36, *p.* 174 (*2d ed.* 1955). Though we recognize the question of causation will doubtless be crucial in prenatal injury cases, we do not believe that the difficulty of proof will be so great as to justify a blanket prohibition against all attempts to overcome it. Furthermore, fictitious claims present no greater problem in this class of cases than in any other, and can be dealt with in the same way that courts have always handled such problems.

We conclude that the reasons advanced for the decisions denying recovery to a child who survives a prenatal injury are inadequate. They deny basic medical knowledge; they ignore the protection afforded unborn children by other branches of the law, and are founded upon fears which should not weigh with the courts. We believe that a surviving child should have a right of action in tort for prenatal injuries for the plain reason that it would be unjust to deny it. Therefore, the rule of *Stemmer v. Kline* is no longer the law of this State.

One matter remains to be considered. Most of the cases that have recognized a right to recover have arisen out of injuries to "viable" fetuses, *i. e.,* fetuses capable of sustaining life independent of the mother. But much of the reasoning in those cases has proceeded from the concept that a fetus capable of separate existence is a distinct juridical entity. See, *e. g., Williams v. Marion Rapid Transit, Inc., supra; Amann v. Faidy, supra.* However, no jurisdiction which has approved recovery for injury to a viable fetus has later denied recovery to a child who survived an injury suffered

before it was viable. In the present case, the complaint alleges that the infant plaintiff was born 75 days after the collision which caused his injury. We have no way of knowing whether his birth on October 8, 1957 was premature or was after a normal term of gestation. The complaint does not allege, nor do the defendants admit, that the infant plaintiff was viable at the time of the collision.

█ We see no reason for denying recovery for a prenatal injury because it occurred before the infant was capable of separate existence. In the first place, age is not the sole measure of viability, and there is no real way of determining in a borderline case whether or not a fetus was viable at the time of the injury, unless it was immediately born. Therefore, the viability rule is impossible of practical application. See the table, giving relative chances of survival for infants born during the various stages of gestation, in *Cooper v. Blanck, supra,* 39 *So. 2d,* at *page* 355; *Maloy, Medical Jurisprudence,* 757 (*2d ed.* 1955); *Herzog, Medical Jurisprudence,* §§ 972–3 (1931); *2 Harper and James, Torts,* § 18.3, *p.* 1031 (1956); *Note,* 48 *Mich. L. Rev.* 539 (1950). In addition, as we said above, medical authority recognizes that an unborn child is a distinct biological entity from the time of conception, and many branches of the law afford the unborn child protection throughout the period of gestation. The most important consideration, however, is that the viability distinction has no relevance to the injustice of denying recovery for harm which can be proved to have resulted from the wrongful act of another. Whether viable or not at the time of the injury, the child sustains the same harm after birth, and therefore should be given the same opportunity for redress.

Although the viability distinction has no real justification, it is explainable historically. The *Dietrich* case announced a theory that an unborn child was part of its mother. The first dissent from this proposition, by Justice Boggs in the *Allaire* case, pointed out that an unborn child who could sustain life apart from its mother could not be considered

part of her. The logical appeal of Justice Boggs' approach, coupled with the understandable conservatism of the earlier courts who broke with the *Dietrich* theory, resulted in a rule of recovery limited by the viability distinction. But the usefulness of that distinction has disappeared with the modern repudiation of the *Dietrich* theory. And since it has no cogent medical reason to support it, and no relevancy to the harm resulting from prenatal injury, we do not believe that it has any place in the determination of the question of liability for wrongful conduct. Our position accords with the recent decisions of a number of courts. *Bennett v. Hymers,* 101 *N. H.* 483, 147 *A. 2d* 108 (*Sup. Ct.* 1958); *Hornbuckle v. Plantation Pipe Line Co.,* 212 *Ga.* 504, 93 *S. E. 2d* 727 (*Sup. Ct.* 1956); *Kelly v. Gregory,* 282 *App. Div.* 542, 125 *N. Y. S. 2d* 696 (*App. Div.* 1953); *Von Elbe v. Studebaker-Packard Corp., supra.* See *Damasiewicz v. Gorsuch, supra.* It also has the support of the leading text writers. *Harper and James, loc. cit. supra; Prosser, supra,* § 36, *p.* 175. See also *White, "The Right of Recovery for Prenatal Injuries,"* 12 *La. L. Rev.* 383 (1952); *"Medical Knowledge Widens Legal Rights of Unborn Child Injured Tortiously,"* 1 *Current Medicine for Attorneys,* No. 6, 23 (1954); *Note,* 26 *Ford. L. Rev.* 684 (1958); *Note,* 7 *Md. L. Rev.* 90 (1957); *Note,* 29 *N. Y. U. L. Rev.* 1155 (1954); *Note,* 50 *Mich. L. Rev.* 312 (1952); *Note,* 34 *Minn. L. Rev.* 65 (1949).

For the reasons stated above the judgment of the Law Division dismissing the complaint of the infant plaintiff and his father suing *per quod* is reversed, and the cause remanded for trial. Costs to abide the event.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.