## TRANSAMERICA INSURANCE COMPANY

v.

## BELLEFONTE INSURANCE COMPANY

and

### Roussel Corporation.

### Civ. A. No. 78–431.

United States District Court,
E. D. Pennsylvania.

May 21, 1980.

James M. Peck, Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiff.

Francis E. Marshall, Marshall, Dennehey & Warner, Philadelphia, Pa., for Bellefonte Insurance Co.

Marvin V. Ausubel, Trubin, Sillcocks, Edelman & Knapp, New York City, for Roussel Corp.

### MEMORANDUM AND ORDER

HANNUM, District Judge.

I. *Case History and Factual Summary.*

On February 9, 1978, the plaintiff Transamerica Insurance Company [hereinafter "Transamerica"], filed this Complaint seeking declaratory judgment relief pursuant to 28 U.S.C. § 2201. The essence of the action requires a determination concerning which of the two insurance companies, Transamerica and/or the defendant Bellefonte Insurance Company [hereinafter "Bellefonte"], provided insurance coverage to the defendant Roussel Corporation [hereinafter "Roussel"] with respect to suits "brought by or on behalf of persons after the expiration of Transamerica's policy period." Presently

before the court are Bellefonte's Motion For Summary Judgment, Roussel's Cross-Motion For Summary Judgment and Transamerica's Cross-Motion For Partial Summary Judgment.

The controversies that inspired this declaratory judgment action are two lawsuits; *Kushnir, et al. v. Cortes, et al.*, in the New Jersey Superior Court for Hudson County and *Denko, et al. v. Roussel Corporation*, in the United States District Court for the District of Delaware. In these cases, pregnant women ingested certain drugs manufactured and distributed by Roussel which, it has been alleged, caused each woman to give birth to a deformed child. The sole issue before this Court concerns which of the two insurance companies, pursuant to the terms of their policies issued to Roussel, is under the obligation to defend and/or indemnify Roussel.

The insurance policy issued by Transamerica extended over the period beginning August 19, 1974 and ending August 19, 1975. Bellefonte's policy period began on August 19, 1975 and ended August 19, 1976. Each of the pregnant women ingested the Roussel drug during Transamerica's policy period but gave birth to their respective children during Bellefonte's policy period. Transamerica contends that the "occurrence" giving rise to the aforementioned lawsuits happened during Bellefonte's policy period when the births were occasioned. Transamerica further contends that the extent of its coverage for "bodily injury" in no event arises because an unborn child is not yet susceptible to such "bodily injury" cognizable under the law. Bellefonte advances the opposite position and contends that the harm occurred when the Roussel drug was ingested and, consequently, when the deformities were induced which, of course, would be within Transamerica's policy period.

## II.  *Choice of Law.*

The parties to this action have advanced the laws of Pennsylvania, New York and New Jersey as applicable to a determination of the issue thus presented. Because

the foregoing decision by the Court is consistent with the precepts of law in all of these jurisdictions, the Court views it an unnecessary function to resolve a choice of law conflict.

## III.  *Motion and Cross-Motions for Summary Judgment.*

█ The threshold question to resolve this dispute is whether the children, while in the fetal stage, may be considered "persons" capable under the law of sustaining "bodily injury." In this regard, the policies issued by Transamerica and Bellefonte are identical in their definitions of "bodily injury":

> "Bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period including death at any time resulting therefrom.

Transamerica contends that a "bodily injury" can not be sustained until the birth of the person injured. According to Transamerica, regardless whether the women in the *Kushnir* and *Denko* actions ingested the Roussel drugs during its policy period, there was no "bodily injury" until the birth of the respective children which occurred during the Bellefonte policy period. Both Transamerica and Bellefonte define "occurrence" as follows:

> An accident, including continuous or repeated exposures to conditions which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the insured.

Transamerica reasons that if "bodily injury" could not occur to an unborn infant, then there could not be an insurable "occurrence" during the Transamerica policy period.

In support of its contention, Transamerica asserts that the decision rendered in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), implies that an unborn fetus is not considered a "person" in the legal sense. Accordingly, since a fetus is not a "person," no bodily injury could occur to it cognizable under the policy definition. The Court does not find this argument per-

suasive. The decision in *Roe* addressed the respective interests of the state and mother and focused on the woman's right of personal privacy in the context of a Texas criminal abortion statute. Whether an unborn person is a "legal" person was not a question decided by the Supreme Court.

The Court also finds Transamerica's citation of *Gildiner v. Thomas Jefferson University*, 451 F.Supp. 692 (E.D.Pa.1978), equally without precedential persuasiveness insofar as its decision refused to recognize the right of an unborn fetus not to be born. In the present case, the fetus asserts an action on its alleged right to be born healthy. Certainly the present case is distinguishable from *Gildiner* on the basis of the relief sought. Chief Justice Weintraub, in *Gleitman v. Cosgrove*, 49 N.J. 22, 53, 227 A.2d 689, 711 (1967), which is factually similar to *Gildiner*, stated,

> We must remember that the choice is not between being born with health or being born without it; it is not claimed [that] the defendants failed to do something to prevent or reduce the ravages of rubella. Rather the choice is between a worldly existence and none at all . . . To recognize a right not to be born is to enter an area in which no one could find his way.

Transamerica's further reliance on *Commonwealth v. Brown*, 6 Pa.D. & C.3d 627 (C.P. Chester 1978), is also unpersuasive. In *Brown*, the court held that a person who caused the death of a 36-week-old fetus could not be charged with criminal homicide. The court held that the fetus was not a "person" within the meaning of the statute. It is critical to note that *Brown* arose in the context of a criminal statute which must be strictly construed against the Commonwealth. *Commonwealth v. Teada*, 235 Pa.Super. 438, 344 A.2d 682 (1975); *Commonwealth v. Pristas*, 222 Pa.Super. 254, 295 A.2d 114 (1972). Therefore, its bearing on the present civil dispute is severely limited.

In *Sinkler v. Kneale*, 401 Pa. 267, 164 A.2d 93 (1960), the court held that a fetus could recover for injury sustained while it was in the womb. The mother was one month pregnant at the time her car was struck by the defendant's automobile. The court found that the fetus had a separate existence from the moment of creation. "[T]he real basis for the decision in *Sinkler* and kindred cases is to permit *the child* to recover just compensation from *the wrong-doer for injuries and for the loss the child itself has and will suffer.*" *Marko v. Philadelphia Transportation Co.*, 420 Pa. 124, 126, 216 A.2d 502, 503 (1966). (Emphasis in original). In *Kelly v. Gregory*, 125 N.Y. S.2d 696, 282 App.Div. 542 (1953), the court held that the legal existence of the child begins at conception and a child born alive may recover for prenatal injury tortiously inflicted. The court noted that the injury occurred in the third month of pregnancy at which time the fetus could not survive outside the womb. The court distinguishes this notion of physical viability from the legal notion of separateness to sustain prenatal injury. In *Smith v. Brennan*, 31 N.J. 353, 157 A.2d 497 (1960), the court found that a child is in existence from the moment of conception and is not merely considered a part of its mother's body. The court held that the infant could recover for prenatal injuries sustained in an automobile accident while rejecting the argument that a fetus must be a "physically viable being" before considered capable of sustaining an actionable injury. "[W]e see no reason for denying recovery for a prenatal injury because it occurred before the infant was capable of separate existence." *Smith v. Brennan, supra* at 363, 157 A.2d at 504. Accordingly, the fetuses involved in the present case are considered by this Court to be capable of sustaining "bodily injury" during Transamerica's policy period.

■ Because this Court recognizes that an unborn fetus could sustain actionable damage, the next inquiry concerns the coverage of the Transamerica and Bellefonte policies to the injuries allegedly sustained. As noted earlier, both Transamerica and Bellefonte use identical policy forms. Transamerica argues that the birth constituted the insurable "occurrence" within the

policy terms, and because the birth took place within Bellefonte's policy period, Bellefonte should be responsible for Roussel's potential liability to the children. As provided in both policies, "occurrence means an accident" and pursuant to *Brenneman v. St. Paul Fire and Marine Insurance Co.*, 411 Pa. 409, 413, 192 A.2d 745, 747 (1963), an accident is defined as "an unanticipated event." The controversy thus centers around when this "unanticipated event" may be considered to have occurred. Transamerica's position is that the deformed birth was the "unanticipated event," whereas Bellefonte argues that the "unanticipated event" was at the time the drug caused the deformities.

To support its contention, Transamerica claims that, where there is a time interval between the act and the damage, it is the time of the damage rather than the time of the act allegedly causing the damage which determines the date of the occurrence. Accordingly, Transamerica cites *Deodato v. Hartford Insurance Company*, 143 N.J.Super. 396, 404, 363 A.2d 361, 365 (1976), in which the court found that the alleged negligent construction of a roof within the insurers policy period was not the insurable "occurrence," rather the "occurrence" was the time "the complaining party was damaged." *See also Muller Fuel Oil Co. v. Insurance Company of North America*, 95 N.J.Super. 564, 232 A.2d 168 (1967).

Transamerica contends that the "complaining party was damaged" at the time of birth when the deformities became apparent. The Court, however, recognizes the principle that there can't be "negligence in the air," relating to the notion that some harm or damage must be sustained before a cause of action arises in tort. Based on the evidence, Transamerica would be hardpressed to argue that bodily injury did not occur to the fetuses before birth. Expert testimony reveals that a limb deformity, if caused by the drug, would have occurred within the forty-fourth day of pregnancy because it is within this period that the limbs develop. Deposition of Dr. Robert L. Brent, pp. 10, 15, 16, 46, 55, 64 and 66. This time period was shown to be within the period of Transamerica's coverage. The

mere fact of birth should not overshadow the fact that the drug (if responsible for the injury) caused irreversable damage to the fetus within the policy period.

Both the *Kushnir* and *Denko* actions pray for relief for injuries sustained by the deformed children as well as injuries sustained by their parents. There is little doubt that both the children and the parents have and will continue to suffer from the deformities. Pennsylvania and New Jersey recognize that "the tortious injury of a child gives rise to two causes of action; one on behalf of the child . . . ; and the other for the parents themselves." *Hunt v. Yeatman*, 264 F.Supp. 490, 491 (E.D.Pa.1967); *Orr v. Orr*, 36 N.J. 236, 176 A.2d 241 (1961). At the time the drug affected the fetuses by causing their limbs to begin to grow in a deformed manner, the childrens' causes of action had accrued. An insurable "occurrence" had then occurred within the Transamerica policy period.

The deformed birth of the children gave rise to separate and distinct causes of action in the parents. The birth of the children is an event that is distinguishable from the event which caused injury to the fetuses while in the womb. The deformed births were unexpected and unintended events which fit the definition of "occurrence" under both insurance policies. The births of the deformed children resulted "in bodily injury . . . neither expected nor intended . . ." to the children's parents. It would be inaccurate to contend that at birth bodily injury was sustained by the child, because the child's injury had occurred previously while in the womb, and the birth had no effect on the damage sustained by the child while in the womb.

On the other hand, the parents sustained no discernable injuries until they became aware of the childrens' deformities at birth. The damages sought by the parents relate primarily to increased medical and childrearing expenses resulting from the birth of deformed children, and the emotional trauma sustained in connection with the deformities suffered by the children. What-

ever may be the ultimate scope and extent of these damages, it is clear that they did not begin to accrue until the occurrence at birth.

The result of this analysis is that the Court finds there were two "occurrences"; hence, two tortious actions obtain. The first, that of the child, happened when the fetus suffered deformities while in the womb during the Transamerica policy period. The second, that of the parents, happened when the child was born during the Bellefonte policy period. Two separate and independent "occurrences" resulted from the mothers' ingestion of Roussel's drugs and each insurer must accept responsibility resulting from the "occurrence" within its respective policy period. Because the Court must limit its ruling in accordance with the motions presented, all of which seek to impose exclusive liability upon one of the insurers, all the motions for summary judgment must be and are denied. Nevertheless, the Court has sought to manifest its intent of what is viewed to be the proper, ultimate resolution of this case.