858 A.2d 1141 (2004)
372 N.J.Super. 368
Patrick DRAPER, Plaintiff-Appellant,
v.
Edward A. JASIONOWSKI, Defendant-Respondent, and
St. Peter's General Hospital, St. Peter's Medical Center, John Van Mater and Pierre-Louis, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 2004.
Decided October 18, 2004.
*1142 Seamus Boyle, Warren, argued the cause for appellant.
Jonathan S. Seligman argued the cause for defendant Edward Jasionowski (Buckley & Theroux, Princeton, attorneys; Mark A. Petraske, of counsel; Mr. Seligman, on the brief).
Before Judges KING, NEWMAN and HOLSTON, JR.
The opinion of the court was delivered by
HOLSTON, JR., J.A.D.
The issue on this appeal is one of first impression. We decide there exists an independent cause of action for an infant, on reaching his majority, against his mother's obstetrician, for prenatal injuries caused by his vaginal delivery when the physician failed to obtain his mother's informed consent prior to delivery. We reverse and remand for trial.
The facts are not in dispute. Plaintiff, Patrick Draper, was born on April 18, 1982 at St. Peter's Hospital in New Brunswick. His mother, Valerie Cissou, was age twenty at the time of his birth.
Plaintiff was in a "frank breech" position with a large cranial vault while in his mother's womb. The delivering physician, defendant, Dr. Edward Jasionowski, was aware of his presentation prior to the delivery. Cissou signed consent forms for both vaginal and cesarean deliveries. She gave birth to plaintiff by vaginal breech delivery.
Plaintiff alleges defendant neither informed his mother of the option to do a cesarean section rather than a vaginal delivery, nor left the decision of his manner of delivery to his mother's choice. The delivery was complicated by a torn umbilical cord. According to the medical report of plaintiff's board certified obstetrics expert, Dr. Richard L. Luciani, plaintiff suffered from anemia, hypoxia and neurological damage, indicating a tremendous loss of blood secondary to the torn umbilical cord. Plaintiff was born with bilateral Erb's Palsy, an injury to the shoulders.
Plaintiff asserts that birth by cesarean section would have prevented his bilateral *1143 Erb's Palsy. Plaintiff initiated suit in 2002, twenty years after his birth. Plaintiff alleges that defendant had a duty to discuss the possibility of a caesarean delivery with his mother. Because defendant did not inform his mother of the cesarean section option for delivery, he failed to obtain her informed consent.
Defendant filed a motion for summary judgment on the informed consent issue alone. Plaintiff cross-moved for summary judgment on the same issue. On December 5, 2003, the Law Division judge granted defendant's motion for summary judgment and denied plaintiff's motion. The judge concluded that because a fetus does not have the ability to consent to a medical procedure, plaintiff could not sustain an independent cause of action arising out of his mother's alleged failure to consent to the method of delivery. We granted plaintiff's motion for leave to appeal. R. 2:2-3(b).
This appeal involves a purely legal issue. Because "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference," our scope of review is de novo. Manalapan Realty v. Manalapan Tp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995).
Defendant argues that the obligation to disclose the risks and alternatives to obstetric care runs solely to the mother and not the child. Defendant contends that plaintiff's informed consent claim is strictly derivative of the mother and time-barred. Defendant argues that no New Jersey case permits an individual, on his own behalf, to file a claim for informed consent for a procedure performed on someone else's body.
Plaintiff argues that New Jersey law recognizes that a doctor owes a duty to an infant in utero when treating his expectant mother. A doctor who fails in the duty of securing informed consent violates a duty owed to both the mother and the child. Plaintiff asserts that his claim is for his own injuries and is not derivative of any claim of his mother for her own injuries. The parties have stipulated that any cause of action which plaintiff's mother may have had is time-barred.
In Smith v. Brennan, 31 N.J. 353, 157 A.2d 497 (1960), our Supreme Court recognized a cause of action on behalf of an infant, born alive, for injuries suffered in utero. Sean Smith, while in the womb of his mother, was injured on July 25, 1956 in an automobile accident caused by the defendant's negligence. He was born about two months later with resulting deformities of his legs and feet. Defendants moved to dismiss on the ground that New Jersey does not recognize a cause of action for negligently-inflicted prenatal injuries. Id. at 355, 157 A.2d 497.
Our Supreme Court, in overruling Stemmer v. Kline, 128 N.J.L. 455, 26 A.2d 489 (E. & A.1942), held that a surviving child should have a right of action in tort for prenatal injuries. The Court found that there was no reason to deny recovery for a prenatal injury because it occurred before the child was capable of separate existence. The Court reasoned that medical authority recognizes that an unborn child is a distinct biological entity and many branches of the law afford an unborn child protection during various periods of gestation. Brennan, supra, 31 N.J. at 366-67, 157 A.2d 497.
Quoting from the dissent in Stemmer v. Kline, it was pointed out there that medical science has established that the unborn child has its own system of blood circulation separate from that of the mother, that the unborn's heart beat is more rapid than the mother's, and that the only dependence *1144 by the child on the mother in utero is for sustenance. Id. at 363, 157 A.2d 497.
The Court reasoned that because medical science recognizes that an infant is a distinct entity before birth, the law recognizes that the rights the child will enjoy when born cannot be violated before birth. Id. at 364, 157 A.2d 497. Therefore, injuries to the unborn child pertain to the child alone.
The Court stated:
justice requires that ... a child has a legal right to begin life with a sound mind and body. If the wrongful conduct of another interferes with that right, and it can be established ... that there is a causal connection between the wrongful interference and the harm suffered by the child when born, damages for such harm should be recoverable by the child.
[Id. at 364-65, 157 A.2d 497.]
The existence of a viable cause of action on behalf of an infant for injuries sustained as a result of a physician's failure to adequately inform his mother of the risks of a medical procedure was established in Niemiera v. Schneider, 114 N.J. 550, 555 A.2d 1112 (1989). Gregory Niemiera suffered a disabling convulsive episode that left him brain damaged when he was age two months. Through his parents, Gregory alleged that his injuries resulted from an adverse reaction to the pertussis component of DPT vaccine administered by a nurse under Dr. Schneider's direction. Id. at 552, 555 A.2d 1112.
The child developed severe brain damage resulting from acute encephalopathy, which was diagnosed eight days after the DPT inoculation. Gregory suffered convulsive seizures. As a result of his nervous system injury, he will have impaired vision and suffer from cerebral palsy. He will be mentally defective for the rest of his life. Id. at 553, 555 A.2d 1112.
When Gregory was age seven, his mother, Joy Niemiera, sued Dr. Schneider for medical malpractice on his behalf. She alleged that Dr. Schneider failed to warn of the vaccine's side effects. Id. at 554, 555 A.2d 1112.
The trial judge granted Dr. Schneider's motion to dismiss Gregory's failure-to-warn claim. The Supreme Court reversed, finding that as a learned intermediary, Dr. Schneider had a duty to give proper warning of the dangers or side effects of the DPT vaccine. The Court determined that the subjective "prudent patient" standard applied to the duty of informed consent, which Dr. Schneider owed to Gregory's mother. The purpose of the standard is to convey what information a good mother would need to know to attend to the health of her child. The parent of the minor child is the one who must make the informed medical decision. Id. at 562-63, 555 A.2d 1112.
The Court stated:
Under the "learned intermediary" doctrine, it is the physician's responsibility to pass on to the parties the information that enables the patient to use the product safely. [T]he question was ... whether the failure to warn the patient deprived her of the opportunity to avert the medical catastrophe that can occur.... A patient warned of the drug's potential consequences and the increased susceptibility of patients in certain contraindicated circumstances might have delayed the shot or responded to the symptoms more aggressively.
[Id. at 565-66, 555 A.2d 1112.] (footnote omitted).
Plaintiff is required to show only that the warning was inadequate and that the harm would have been prevented by an adequate warning. Expert testimony established that Gregory's affliction was not *1145 irreversible. Id. at 567, 555 A.2d 1112. If an adequate warning had been given of the symptoms that alerted to a dangerous adverse reaction to the vaccine, aggressive medical treatment could have been sought. Similarly, if his mother had been warned that convulsive brain disorders were a potential side-effect of the DPT vaccine, she might have opted to delay the DPT vaccination because of her child's eye infection.
The Supreme Court recognized the cause of action, which Gregory's mother was asserting on her son's behalf, in addition to the cause of action asserted on behalf of herself and her husband. A child of two-months is in no better position to personally give an informed consent than plaintiff, Patrick Draper, was in utero. Indeed, a child in any stage of minority would require informed consent obtained by a parent or guardian before submitting to a medical procedure or treatment. Clearly, New Jersey law grants a child the right to assert a cause of action by the parent, as guardian ad litem, if the parent was not warned by way of informed consent of the dangers of treatment.
Procanik v. Cillo, 97 N.J. 339, 478 A.2d 755 (1984), is also instructive. There, the Supreme Court approved a cause of action for wrongful birth. The Court declined to sanction a cause of action for general damages for wrongful life. However, the Court recognized a wrongful life cause of action, whereby a child may recover special damages. The Court held that Peter Procanik could recover extraordinary medical expenses caused by his mother's physician's negligent failure to inform his parents that his mother had contracted German measles during the first trimester of her pregnancy. The physician's failure to inform deprived Peter's mother of the right to make an informed decision as to whether or not to continue her pregnancy. Id. at 342, 478 A.2d 755. Peter Procanik was born with congenital rubella syndrome. Ibid.
As in plaintiff's case, Peter's parents were time-barred from asserting their own cause of action. The Court found this of little importance, noting that the "right to recover the often crushing burden of extraordinary expenses visited by an act of medical malpractice should not depend on the `wholly fortuitous circumstance of whether the parents are available to sue.'" Id. at 352, 478 A.2d 755. (quoting Turpin v. Sortini, 31 Cal.3d 220, 182 Cal.Rptr. 337, 643 P.2d 954, 965 (1982)).
Explaining the rationale for its decision, the Court noted:
The foreseeability of injury to members of a family other than one immediately injured by the wrongdoing of another must be viewed in light of the legal relationships among family members. A family is woven of the fibers of life; if one strand is damaged, the whole structure may suffer.... When a child requires extraordinary medical care, the financial impact is felt not just by the parents, but also by the injured child. As a practical matter, the impact may extend beyond the injured child to his brothers or sisters."
[Id. at 351, 182 Cal.Rptr. 337, 643 P.2d 954.]
The same rationale applies here. The Court in Procanik permitted recovery only for extraordinary medical expenses, since such damages are "predictable, certain and recoverable." Ibid. The Court refused to permit a claim for damages for a "diminished childhood," noting the difficulty in quantifying the damages. Id. at 353, 478 A.2d 755. Significantly, the Court expressed its awareness of "the cost of the extraordinary medical care to the child or the parents, when combined with the right of the parents to assert a claim for their own emotional distress, ... [fulfills] the *1146 dual objectives of a tort system: the compensation of injured parties and the deterrence of future wrongful conduct." Id. at 355, 478 A.2d 755.
By way of dicta, Justice Pashman wrote: "Both causes of action [wrongful life and wrongful birth] are distinguishable from the situation where negligent injury to a fetus causes an otherwise normal child to be born in an impaired condition. See, e.g., Smith v. Brennan, 31 N.J. 353, 157 A.2d 497 (1960); W. Prosser, Law of Torts § 55 at 335-38 (4th ed.1971)." Id. at 348, 157 A.2d 497. Thus, the Court acknowledged its continued approval of the viability of a cause of action of an infant, born alive, for injuries sustained while in the mother's womb, which the Court earlier recognized in Brennan. Such a cause of action includes medical malpractice.
Plaintiff alleges that his mother would have opted for delivery by cesarean section had she been fully informed of the medical dangers. Had he been delivered by cesarean section, plaintiff contends he would have been born without deformities and experienced a normal childhood.
Thus, Brennan and Procanik recognize the infant's own cause of action for damages proximately caused by the negligence of another while in utero. Niemiera recognizes a cause of action brought by a parent on behalf of an infant for the infant's own damages based on the inability of the parent to give informed consent. Procanik reaffirmed judicial recognition of the duty owed by a mother's obstetrician to her unborn child, as well as to the mother. Unlike Procanik, however, the judicial comparison here is not between existence and non-existence of life, but between existence and non-existence of injury. Plaintiff alleges he did not have to suffer Erb's Palsy. He suffers as a result of his vaginal delivery, which could have been avoided.
Gregory Niemiera, age two, could not have given informed consent. Similarly, no minor or incompetent person could bring suit on their own behalf for their own injuries, on reaching majority, or on return to competency, as a result of the violation of the duty of informed consent, if the law were to bar such an action because the informed consent could only be given to a parent or guardian. No sound public policy reason exists for such a restriction. The law of this State recognizes the viability of such a cause of action.
Other states have specifically recognized a child's right to recover for injuries suffered as a result of the failure to offer a child's mother a cesarean section. In Schreiber v. Physicians Ins. Co. of Wisconsin, 223 Wis.2d 417, 588 N.W.2d 26, cert. denied, 528 U.S. 869, 120 S.Ct. 169, 145 L.Ed.2d 143 (1999), the court upheld a claim by a minor child for injuries suffered when her physician did not offer to her mother the option of a cesarean section. Similarly, in Campbell v. Pitt County Mem'l Hosp., Inc., 84 N.C.App. 314, 352 S.E.2d 902, aff'd, 321 N.C. 260, 362 S.E.2d 273 (1987), the claim of an injured child for damages incurred when defendant failed to obtain her mother's informed consent prior to performing a vaginal delivery was upheld. The jury had specifically found a lack of traditional negligence against the defendant but did find that the defendant had failed to obtain plaintiff's mother's informed consent. Likewise, in Randall v. United States, 859 F.Supp. 22 (D.D.C.1994), the court found that plaintiff had not met the burden of proof by demonstrating a failure to perform a cesarean delivery constituted malpractice. However, the court found for plaintiff and allowed a claim for pain and suffering on behalf of the infant-child where the physicians had not obtained the plaintiff's mother's informed consent to vaginal delivery.
*1147 In Harrison v. United States, 284 F.3d 293 (1st Cir.2002), the Court of Appeals reversed the District Court's finding that a physician had no duty to afford an expectant mother the opportunity to have a cesarean section. Applying Massachusetts law, the court found that if a risk to the baby or a risk to the mother is material to the patient-mother's decision, the doctor has a duty to disclose that risk. The court noted:
The patient's opportunity to perform this balancing may assume particular importance when the patient is a mother giving birth. In such a case, the mother may purposefully discount risks to herself in order to choose a treatment or procedure that will present the least risk to her newborn child. While the treating physician will undoubtedly feel the need to balance the welfare of mother and child, the mother may consider her baby's health as the paramount concern. See Statement by American Medical Association on Forced Cesarean Section Court Case in Chicago, U.S. Newswire, December 15, 1993, available at 1993 WL 7132850 (opining that in cases where there is a "trade-off" between the health of the mother and the child, "pregnant women routinely choose" and "should" choose a cesarean section "for the benefit of their fetuses," even though the risk to the woman is higher than from a vaginal delivery).
[Id. at 301 n. 7.]
On remand, the District Court awarded $250,000 in damages to the child who had sustained Erb's Palsy as a result of the obstetrician's breach of the duty of informed consent to the mother. The court there noted that any comparative negligence on the part of the mother was irrelevant to an assessment of damages, as the child, not the mother, was the plaintiff in the action, and the parent's negligence may not be imputed to her child. Harrison v. United States, 233 F.Supp.2d 128 (D.Mass.2002).
No case has been presented from any jurisdiction which precludes a child's claim for birth injuries suffered as a result of a pre-birth violation of the duty of informed choice and consent. Hughson v. St. Francis Hosp. of Port Jervis, 92 A.D.2d 131, 459 N.Y.S.2d 814 (1983), addressed the precise issue before us. The court held that an independent cause of action on behalf of an infant may be sustained against a physician for prenatal injuries due to the physician's alleged failure to obtain the informed consent of the mother. Id. at 815. As here, the appeal in Hughson arose from a dismissal of the complaint. Ibid. The pleadings were devoid of any facts concerning the nature of the infant's injuries, although it was clear plaintiff's mother was time-barred from asserting her own claim. Id. at 816.
The court assumed that damages could be readily ascertained and that causation existed. Id. at 815. Defendant's duty to the infant was the sole issue. Defendant argued that the "obligation to disclose the risks and alternatives of obstetric care runs to the mother," and since she must consent for both her and the child, the child's cause of action must be "derivative" of the mother's time-barred cause of action. Ibid. Rejecting this argument, the Hughson court found the infant's cause of action to be "viable and independent." Id. at 817. Significantly, the court noted that "it is now beyond dispute that in the case of negligence resulting in prenatal injuries, both the mother and the child in utero may each be directly injured and are each owed a duty, independent of the other." Id. at 816. (emphasis added). Plaintiffs cannot be denied protection against incompetent medical advice or treatment simply because they are incapable of giving legal *1148 consent. Id. at 817. The court found further support for its holding in the recognition by the New York Legislature that an infant in utero is as much a "patient" as the expectant mother. Ibid.
Addressing public policy concerns, the court observed that denying relief to the infant-patient would be tantamount to ignoring "the realities of modern obstetrical practice" by denying the in utero infant "independent protection against incompetent medical advice." Id. at 818. Indeed, since the failure to disclose risks and alternatives to the mother may result in "direct physical injury to the fetus alone," the court found it necessary that the infant be able to sustain an independent cause of action. Ibid. To illustrate the potentially detrimental results of a contrary holding, the court pointed to the Thalidomide litigation, where mothers who used the drug were not affected but the consequences to their children were devastating. Ibid. Denying relief to the children in those cases, for example, would have been grossly unfair.
Defendant in the case before us asserted that the decision of whether to perform a caesarean section is a medical judgment, not an option for the patient, and consequently, he was not required to obtain plaintiff's mother's informed consent regarding the method of delivery. If this were true, plaintiff's informed consent claim would be moot. The flaw in defendant's reasoning, is that, regardless of how the decision to perform a caesarean is made, any birthing method is an "invasion" of the mother's body which gives her the right to refuse treatment. See Matthies v. Mastromonaco, 160 N.J. 26, 34, 733 A.2d 456 (1999) (noting the informed consent doctrine is derived from the patient's "right of self-determination"). Defendant's characterization of such a judgment as entirely within his discretion is inaccurate.
We hold that New Jersey recognizes an independent cause of action on behalf of an infant, on reaching majority, against the child's mother's obstetrician, for prenatal injuries caused by the child's vaginal delivery, arising out of the failure of the physician to obtain the child's mother's informed consent, prior to the child's delivery.
The judgment of the Law Division granting summary judgment to the defendant is reversed. The informed consent claim is remanded to the Law Division for trial.
Reversed and remanded.