**Marissa MILLER, A Minor, by and through Her Mother, and Next Friend, Miranda MILLER**

v.

**John DACUS, M.D.**

Supreme Court of Tennessee, at Nashville.

June 7, 2007 Session.

Aug. 17, 2007.

William B. Raiford, III, Clarksdale, Mississippi, Timothy R. Holton and Carroll C. Johnson, III, Memphis, Tennessee, for the petitioner, Marissa Miller.

C.J. Gideon, Jr., Dixie W. Cooper, Kelly R. Thomas, and Christopher A. Vrettos, Nashville, Tennessee, for the respondent, John Dacus, M.D.

## OPINION

WILLIAM M. BARKER, C.J., delivered the opinion of the court, in which JANICE M. HOLDER, CORNELIA A. CLARK, and GARY R. WADE, JJ. joined.

In 2003, the Plaintiff through her mother and next friend brought a medical malpractice suit in federal district court against the obstetrician for injuries sustained by the Plaintiff during her birth in 1993, alleging both medical negligence and lack of informed consent. The district court dismissed the lack of informed consent claim on summary judgment, ruling that a child born alive does not have an independent action for lack of informed consent. On appeal, the United States Court of Appeals for the Sixth Circuit certified two questions of law to this Court. We hold that a child born alive does have an independent cause of action for injuries caused by the failure of a physician to obtain informed consent from the child's mother during labor. Also, we hold that Tennessee Code Annotated section 28–1–106 tolls the three-year statute of repose for the Plaintiff's lack of informed consent claim because the claim was commenced before December 9, 2005. *See Calaway v. Schucker*, 193 S.W.3d 509 (Tenn.2005).

## I. Facts and Procedural History

This case comes to us as certified questions of law.[1] We summarize the relevant facts based on the certification order of the United States Court of Appeals for the Sixth Circuit:

Plaintiff Marissa Miller ["Plaintiff"], through her mother and next friend, Miranda Miller appeals the district court's judgment in favor of Defendant John Dacus, M.D. ["Defendant"] on Miller's claims of medical malpractice.

---

1. "The Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee. This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee." Tenn. Sup.Ct. R. 23, § 1.

Miller was injured when her mother gave birth to her in 1993. Over ten years later in 2003, Miller brought a medical malpractice suit against Dacus, asserting two distinct legal theories before the district court—one for lack of informed consent and another for medical negligence. The district court granted Dacus' motion for summary judgment, dismissing Miller's lack-of-informed consent claim on the basis that a doctor's duty to obtain informed consent under Tennessee law is owed to the mother, not to the fetus, and thus a claim for failure to provide informed consent does not belong to the child. The remaining claim of medical negligence proceeded to trial where the jury found that Dacus had not breached the applicable standard of care.

## II. Analysis

Pursuant to Rule 23 of the Rules of the Supreme Court of Tennessee, this Court accepted certification of the following questions from the United States Court of Appeals for the Sixth Circuit:

1. Whether a child born alive has an independent cause of action for injuries allegedly caused by the failure of a physician to obtain informed consent from the child's mother during labor and delivery.

2. If the Answer to Question 1 is 'Yes,' whether the minority provision of Tennessee's legal disability statute, Tenn.Code Ann. § 28–1–106, tolls the medical malpractice statute of repose, Tenn.Code Ann. § 29–26–116(a)(3), as applied to a fetus's lack of informed consent claim.

### 1. Lack of Informed Consent Claim

■ The first question presented to us is whether Tennessee law recognizes a child's independent cause of action for prenatal injuries resulting from a physician's failure to obtain informed consent from the mother during labor and delivery. The question raised by this case is one of first impression for this Court. We hold that a child who is born alive does have an independent action against a physician for failure to obtain informed consent.

■ In Tennessee, it has long been established that an infant has a cause of action for prenatal injuries negligently caused by another. *See Shousha v. Matthews Drivurself Serv., Inc.,* 210 Tenn. 384, 358 S.W.2d 471 (Tenn.1962). In *Shousha,* the defendant crashed into the back of the mother's car while stopped at a stoplight and fatally injured her triplet sons whom she was carrying *en ventre sa mere. Id.* at 472. The sons were delivered but died shortly thereafter. *Id.* The question before this Court was whether an infant *en ventre sa mere,* who is born alive, may recover damages for prenatal injuries negligently caused by another. *Id.* We held that a "viable child receiving prenatal injuries proximately resulting from negligence of another has a cause of action conditioned only upon his being born alive. His right to prosecute his remedy for such injuries commences upon his live birth. We believe that sound public policy and justice requires that we so hold." *Id.* at 476. And having recognized that a child may recover for negligently inflicted prenatal injuries, we held that a child who is born alive is a person within the meaning of the wrongful death statute so that his parents could maintain an action for his injuries and death. *Id.*[2]

2. Tennessee's wrongful death statute now provides that a person includes a "fetus which was viable at the time of injury." Tenn.Code Ann. § 20–5–106(c) (Supp.2006).

Our decision in *Shousha* approved of the rationale from the Massachusetts Supreme Court in the case of *Keyes v. Construction Service, Inc.*, 340 Mass. 633, 165 N.E.2d 912 (Mass.1960), which recognized the right of a child to recover for prenatal injuries caused by the tortious acts of another:

"Natural justice demands recognition of a legal right of a child to begin life unimpaired by physical or mental defects resulting from the injury caused by the negligence of another. A manifest wrong should not go without redress. Since the law protects an unborn child in the descent and devolution of property whenever it would be for the benefit of the child and in the enforcement of criminal law, the unborn child is regarded as a legal entity; therefore by analogy the law should recognize the right of an unborn child not to be injured tortiously by another."

*Shousha*, 358 S.W.2d at 474 (quoting *Keyes*, 165 N.E.2d at 914). In *Shousha*, we concluded that the "rule of nonliability to a viable child, born alive, for personal injuries negligently inflicted before birth is too harsh and is contrary to that justice which the law seeks to save and promote." *Id.* at 476.

The Plaintiff in this case filed an action to recover damages for prenatal injuries based not only on the Defendant's negligence but also for the Defendant's failure to obtain informed consent from the Plaintiff's mother before providing medical treatment. The district court dismissed the Plaintiff's claim for lack of informed consent, concluding that a child does not have a separate action for lack of informed consent for prenatal injuries. Because a parent is required to consent for a child before receiving medical treatment, the district court reasoned that a claim for lack of informed consent belongs only to the mother in the context of labor and delivery.

 Lack of informed consent claims are governed by Tennessee Code Annotated section 29–26–118 (2000), which provides the following:

In a malpractice action, the plaintiff shall prove by evidence as required by § 29–26–115(b) that the defendant did not supply appropriate information to the patient in obtaining informed consent (to the procedure out of which the plaintiff's claim allegedly arose) in accordance with the recognized standard of acceptable professional practice in the profession and in the specialty, if any, that the defendant practices in the community in which the defendant practices and in similar communities.

A claim for lack of informed consent is a form of medical malpractice. Before providing medical treatment, a health care provider has a duty to disclose "appropriate information" to a patient to enable the patient to give informed consent to the treatment or the procedure. Tenn.Code Ann. § 29–26–118. The "appropriate information" that must be disclosed depends on the "usual and customary advice given to patients to procure consent in similar situations." *Shadrick v. Coker*, 963 S.W.2d 726, 732 (Tenn.1998). Typically, the health care provider must "inform the patient of the diagnosis or nature of the patient's ailment, the nature of and reasons for the proposed treatment or procedure, the risks or dangers involved, and the prospects for success." *Id.* (citing 70 C.J.S. *Physicians and Surgeons* § 93 (1987)). "The patient must also be informed of alternative methods of treatment, the risks and benefits of such treatment and, if applicable, that the proposed treatment is experimental." *Id.* Whether the information given to the patient is sufficient to satisfy the statutory standard

"depends on the nature of the treatment, the extent of the risks involved, and the standard of care." *Cardwell v. Bechtol,* 724 S.W.2d 739, 749 (Tenn.1987).

Defendant argues that because Tennessee Code Annotated section 29–26–118 requires a health care provider to disclose to patients appropriate information so that the patient can make an intelligent decision about whether to consent to the treatment or procedure, section 29–26–118 cannot be applicable to an infant in utero who is incapable of providing consent.

◼ Whether a person is capable of consenting to a medical treatment or procedure is not determinative of whether the person has an independent claim for lack of informed consent. Tennessee law allows consent for medical treatment for persons incapable of consenting for themselves in various situations. Courts are authorized to appoint conservators for disabled persons, and the appointed conservator may give or withhold consent for medical treatment. Tenn.Code Ann. § 34–3–104(8) (Supp.2006). The law allows for execution of a power of attorney for health care by means of which one may appoint an attorney-in-fact to give or withhold consent to medical treatment in the event of disability. *See* Tenn.Code Ann. §§ 34–6–201(1), 204(d) (2001). And parents may also give consent for medical treatment of young children. *Cardwell,* 724 S.W.2d at 745.

In each of these situations where the law provides that a person may give consent for another, it is the disabled person or the incompetent or the child who is actually the patient and who is at risk of suffering harm. *See Sullivan v. Chattanooga Med. Investors, LP,* 221 S.W.3d 506, 509 (Tenn. 2007) (concluding that in the context of a durable power of attorney, the claim belongs to the "person who is under the disability, [and] who suffered the legal wrong").

In *Cardwell,* the plaintiff, who was seventeen years old, went to see an osteopath about pain that she was suffering in her back. 724 S.W.2d at 741. The osteopath treated her with manipulations to her neck, spine, and legs. *Id.* at 741–42. After the treatment, the plaintiff started to experience severe pain in her legs, was admitted to an emergency room, and required surgery for a herniated disc. *Id.* at 742. The plaintiff filed a complaint alleging failure of the osteopath to obtain informed consent and arguing that as a minor, she had not provided effective consent to the medical treatment. *Id.* at 743. In adopting the mature minor exception to the common law rule that parental consent is required for medical treatment of minors, we accepted that a minor has an independent cause of action for lack of informed consent. *Id.* at 749 ("[The application of the mature minor exception] is a question of fact for the jury to determine whether the minor has the capacity to consent to and appreciate the nature, the risks, and the consequences of the medical treatment involved.").

◼ Also in *Cardwell,* we stated that for minors who do not have the capacity to consent, a physician must obtain consent from a parent or other legal guardian before providing medical treatment. 724 S.W.2d at 745. To determine whether a minor has the capacity to consent, Tennessee follows the Rule of Sevens. *Id.* The Rule of Sevens states that when a minor is under the age of seven, the minor has no capacity to consent; when a minor is between the ages of seven and fourteen, there is a rebuttable presumption in the favor of no capacity; and when a minor is between fourteen and eighteen, there is a rebuttable presumption in the favor of capacity. *Id.*

And while we stated in *Cardwell* that it is a question of fact for the jury to determine whether a minor has the capacity to consent, we were careful not to alter the general rule requiring parental consent for the medical treatment of minors. 724 S.W.2d at 749. We observed that "it would rarely, if ever, be reasonable, absent an applicable statutory exception, for a physician to treat a minor under seven years" without parental consent. *Id.*

After considering our prior jurisprudence and the statutory law in this area, we believe two principles are clear: (1) that a minor can recover for prenatal injuries caused by the negligence of another, *see Shousha,* 358 S.W.2d at 476, and (2) that a minor has an independent action for lack of informed consent against a medical provider, *see Cardwell,* 724 S.W.2d at 749. If a minor can recover for prenatal injuries caused by negligence, a minor should be able to recover for prenatal injuries caused by the failure of a health care provider to obtain informed consent. There is no meaningful distinction between a minor who suffers injuries in utero from the negligence of a driver on the road and a minor who suffers injuries in utero from the failure of a physician to disclose all appropriate information to the minor's mother before performing a medical procedure. In both cases, the minor's legal right "to begin life unimpaired by physical or mental defects resulting from the injury" has been violated by the legal wrong of another. *Shousha,* 358 S.W.2d at 474 (quoting *Keyes,* 165 N.E.2d at 914).

And if a minor has an independent action for lack of informed consent for injuries that occur after birth, the minor should have an independent action for injuries that occur prior to birth. It would be arbitrary to allow a minor to recover for injuries sustained ten minutes after delivery and to prohibit a minor to recover from injuries sustained ten minutes before delivery. The minor is unable to consent in either circumstance, and effective consent must be obtained from a parent or guardian. Furthermore, there is no language either in the informed consent statute or in our prior jurisprudence to suggest that a claim for lack of informed consent should be limited to injuries sustained after birth. *See, e.g., Shadrick,* 963 S.W.2d at 732 (stating that "[w]hen the health care provider performs the treatment or procedure without the requisite informed consent of the patient, liability attaches for the resulting injuries regardless of whether those injuries resulted from negligence"); *Bryant v. HCA Health Servs. of N. Tenn., Inc.,* 15 S.W.3d 804, 810 (Tenn.2000); *Ashe v. Radiation Oncology Assocs.,* 9 S.W.3d 119, 123–24 (Tenn.1999); *Blanchard v. Kellum,* 975 S.W.2d 522, 524 (Tenn.1998).

Other jurisdictions recognize that a viable fetus who is born alive has an independent cause of action for injuries based on a physician's failure to obtain informed consent from the child's mother during labor and delivery. In *Hughson v. St. Francis Hospital of Port Jervis,* 92 A.D.2d 131, 459 N.Y.S.2d 814 (N.Y.App.Div.1983), a New York court reasoned that a surviving child has a cause of action against a physician for failure to obtain informed consent because an infant in utero may be injured by the physician's actions. 459 N.Y.S.2d at 818. The court noted that "it is now beyond dispute that in the case of negligence resulting in prenatal injuries, both the mother and the child *in utero* may each be directly injured and are each owed a duty, independent of the other." *Id.* at 816. The court explained the implications of finding a duty to disclose to an infant in utero as follows:

> The medical practitioner is merely being compelled to disclose to the expectant

mother the available alternatives to treatment and the reasonably foreseeable risks and benefits involved. The choice or decision is the mother's, but it must be made with knowledge of the risks to her unborn child. To the latter, an independent duty of disclosure, via the mother, is owed.

*Id.* at 818–19.

In *Draper v. Jasionowski*, 372 N.J.Super. 368, 858 A.2d 1141 (N.J.Super.Ct.App.Div.2004), the plaintiff alleged that his mother would have opted for delivery by cesarean section had she been fully informed of the dangers of a vaginal birth. *Id.* at 1146. Had he been delivered by cesarean section, the plaintiff contended he would have been born without deformities and experienced a normal childhood. *Id.* The New Jersey court held that there exists an independent cause of action for an infant against his mother's obstetrician for prenatal injuries caused by his vaginal delivery when the physician failed to obtain his mother's informed consent prior to delivery. *Id.* at 1142; *see also Randall v. United States*, 859 F.Supp. 22, 32 (D.D.C. 1994) (recognizing duty of hospital to inform the plaintiff's mother of the risks associated with a vaginal delivery in a lack of informed consent claim brought by child); *Roberts v. Patel*, 620 F.Supp. 323,

326 (N.D.Ill.1985) (holding that physicians owe a duty to obtain informed consent for both mother and child); *Campbell v. Pitt County Mem'l Hosp., Inc.*, 84 N.C.App. 314, 352 S.E.2d 902, 907 (N.C.Ct.App.), *aff'd*, 321 N.C. 260, 362 S.E.2d 273 (N.C. 1987) (holding that hospital had a duty to obtain informed consent for an infant in utero before vaginal.delivery).

▆▆▆ In the context of labor and delivery, the health care provider has two patients, the mother and the infant in utero. American College of Obstetricians and Gynecologists, *Ethical Decision–Making in Obstetrics and Gynecology*, ACOG Technical Bulletin No. 136, at 4 (Nov.1989) ("In the care of obstetric patient, the traditional physician-patient relationship expands to include the fetus."). For medical procedures and treatment involving a pregnant mother and especially when the pregnant mother enters labor, informed consent from the mother provides the necessary consent for medical treatment for the mother and the infant in utero. Despite the implications to a mother of any medical treatment provided to an infant in utero during labor and delivery, the duty to disclose appropriate information before medical treatment is owed both to the mother and the infant in utero, whose consent is obtained from the mother.[3]

---

**3.** An infant in utero is also considered a person for other purposes under the law. " 'It is capable of having a legacy, or a surrender of a copyhold estate, made to it. It may have a guardian assigned to it; and it is enabled to have an estate limited to its use, and to take afterwards by such limitation, as if it were actually born.' " *Shousha*, 358 S.W.2d at 474 (citations omitted); *see also* Tenn.Code Ann. § 39–13–107 (2006) (recognizing that a viable fetus may be a victim of an assaultive offense); *Id.* § 39–13–214 (2006) (same for any criminal homicide); *Id.* § 68–5–703(g)(2) (2006) (requiring a health care provider who assumes responsibility for prenatal care of a pregnant woman, in the event the woman tests positive for HIV, to counsel the woman

to obtain appropriate medical treatment for her baby and inform her of increased risks if she fails to obtain treatment); *Id.* § 68–131–304(a)(2)(B)(ii) (2006) (requiring a warning on products that contain a toxic substance causing chronic illness that the product may cause birth defects or harm a developing fetus).

The duty of a physician to obtain informed consent from an infant in utero is not affected by the dicta in *Planned Parenthood of Middle Tennessee v. Sundquist*, 38 S.W.3d 1 (Tenn. 2000), in which the majority referred to the informed consent statute and stated that the General Assembly "has provided for a cause of action based on the lack of informed con-

As we stated in *Shousha*, the "rule of nonliability to a viable child, born alive, for personal injuries negligently inflicted before birth is too harsh and is contrary to that justice which the law seeks to save and promote." 358 S.W.2d at 476. In this case, the Plaintiff as an infant in utero had no capacity to consent at the time the medical procedure was performed, and consent for the procedure was required from the Plaintiff's mother. *See Cardwell,* 724 S.W.2d at 749 ("[I]t would rarely, if ever, be reasonable, absent an applicable statutory exception, for a physician to treat a minor under seven years" without parental consent.). If the Defendant failed to obtain informed consent from the mother before performing the medical procedure, the Defendant's breach will give rise to two claims, one from the mother and one from the infant in utero. For the reasons stated above, we hold that a minor does have an independent action against a medical provider based on lack of informed consent for prenatal injuries suffered during labor and delivery.

### 2. Applicability of Statute of Repose

█ Defendant argues that if we recognize an independent cause of action on behalf of the Plaintiff for failure to obtain informed consent during labor and delivery, the Plaintiff's claims should be barred by the three-year statute of repose for medical malpractice actions, Tenn.Code Ann. § 29–26–116(a)(3) (2000). The Plaintiff sustained her injuries in 1993 at the time of her birth. She did not file her complaint in the United States District Court for the Middle District of Tennessee until 2003.

Tennessee Code Annotated section 29–26–116(a)(3) provides for a three-year stat-

ute of repose for medical malpractice claims: "In no event shall any [malpractice] action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant, in which case the action shall be commenced within one (1) year after discovery that the cause of action exists."

Tennessee Code Annotated section 28–1–106 (2000) provides for a tolling period during a person's minority or disability:

> If the person entitled to commence an action is, at the time the cause of action accrued, either under the age of eighteen (18) years, or of unsound mind, such person, or such person' representatives and privies, as the case may be, may commence the action, after the removal of such disability, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from the removal of such disability.

In *Calaway v. Schucker,* 193 S.W.3d 509 (Tenn.2005), we held that the minority provision of Tennessee's legal disability statute, Tenn.Code Ann. § 28–1–106, does not toll the three-year medical malpractice statute of repose. *Id.* at 517. In so holding, we overruled a Court of Appeals' decision, *Bowers v. Hammond,* 954 S.W.2d 752 (Tenn.Ct.App.1997), which held that the three-year medical malpractice statute of repose is tolled during the minority of the plaintiff. *Id.* at 517. However, we stated that "[i]n order to avoid undue hardship to potential plaintiffs who have relied upon the *Bowers* rule, the new rule we announce today is to have prospective application only." *Id.* at 518. "Therefore, for cases

sent and has recognized that informed consent is intended to benefit the patient, i.e., the

pregnant woman." 38 S.W.3d at 21.

commenced on or before December 9, 2005, we hold that the plaintiff's minority tolls the medical malpractice statute of repose." *Id.*

As previously stated, the Plaintiff through her mother filed her claim in 2003. Because her case commenced before December 9, 2005, the Plaintiff's minority tolled the three year statute of repose for medical malpractice actions. The Plaintiff was ten years old at the time. She falls within the protection of Tennessee's disability tolling statute. The Plaintiff's action for lack of informed consent is not barred by the three-year statute of repose.

### III. Conclusion

We hold that a child born alive does have an independent action for injuries caused by the failure of a physician to obtain informed consent from the child's mother during labor and delivery. We also hold that Tennessee's legal disability statute, Tenn.Code Ann. § 28–1–106, tolls the three-year statute of repose for medical malpractice actions, Tenn.Code Ann. § 29–26–116(a)(3), as applied to the Plaintiff's informed consent claim because the case was commenced before December 9, 2005.

Having answered the certified questions, the Clerk is directed to transmit a copy of this opinion in accordance with Tennessee Supreme Court Rule 23(8).

Costs in this case are taxed to the respondent, John Dacus, M.D., and his sureties, for which execution may issue if necessary.